BIRMINGHAM COAL & IRON CO. et al. v. SOUTHERN STEEL CO.

(District Court, N. D. Alabama. January 21, 1908.)

Nos. 7,977 (239), 7,980 (240), 8,188 (250).

BANKRUPTCY—COLLUSION BETWEEN PETITIONING CREDITORS AND BANKRUPT IN SELECTING RECEIVERS—EFFECT.

Where receivers, the appointment of whom is prayed for in a petition in bankruptcy against a corporation, were in fact selected by the alleged bankrupt and named at its instance, they will not be appointed, or if such facts are shown after their appointment they will be removed; but the court is not required because of such collusion, which was not successful in procuring the appointments desired, to dismiss the petition in favor of one filed later by other creditors, and, where it is otherwise sufficient, the adjudication will be made thereon.

In Bankruptcy. In the matter of the Southern Steel Company, bankrupt. Petitions of the Birmingham Coal & Iron Company, the Dubose Brothers Iron Company and others, and the Southern Cement Company and others for appointment of receivers.

Percy & Benners, for first petitioning creditors.

Ward & Rudolph, Lee J. Marx, Powell & Blackburn, and A. Leo Oberdorfer, for second petitioning creditors.

O. R. Hood, for Southern Steel Company.

Campbell & Johnston and E. H. Dryer, for receivers.

HUNDLEY, District Judge. In order to present a proper consideration of the issues involved in the matters here presented to the court, a brief statement of the facts and pleadings connected with this matter should be here referred to.

On the 24th day of October, 1907, a petition in behalf of certain creditors named therein was filed in this court praying that the Southern Steel Company be adjudged a bankrupt. These same creditors also filed at the same time a petition asking that Morris Adler and Edgar L. Adler be appointed receivers of the property and estates of the said steel company, which said petitions were duly presented to me at Huntsville, Ala., on the 25th day of October, 1907, at 9 a. m. At the same time there was presented to me at Huntsville a petition of other creditors named therein seeking to have other receivers appointed for the property and estates of the Southern Steel Company. In that petition the said creditors averred that the first petition was a collusive one between the creditors named therein and the bankrupt, and prayed the court that receivers should be appointed who were disinterested, and who did not bear friendly and collusive interest with the bankrupt. At that time, with one set of creditors urging the appointment of Morris and Edgar Adler and another set of creditors averring collusive effort to secure the appointment of said receivers, the court was besieged with telegrams and telephone messages on both sides of the controversy of a bewildering and contradictory nature. It was represented to the court that Edgar L. Adler was a man of practical experience in the management of such properties as formed the estates of the Southern Steel Company, and it was further shown to the court that Morris Adler had no such practical experience. With such evidence at hand as the court could at that time gather, in order to secure an impartial and intelligent management of the properties of the bankrupt, the court entered an order appointing said Edgar L. Adler, who was shown to have had some actual experience in such matters, E. G. Chandler, a man whom it was shown to the court to have had a large experience in the management of commissaries, with which the receivers would naturally have to deal in an extensive manner, and Joseph O. Thompson, a man of fine character and business integrity. At that time Edgar L. Adler was totally unknown to the court, either personally or as to his capacity and fitness to discharge the office of receiver, and he was appointed at the earnest suggestion of certain creditors and upon testimony bearing upon his fitness. The other two receivers, Chandler and Thompson, were urged for appointment by many creditors and parties in interest, and in addition thereto, from a long acquaintance, were known personally by the court to be men of irreproachable character and unquestioned business integrity. After the presentation of the petitions as above referred to, the court after a patient and careful consideration made appointment of the three receivers as above outlined.

On the 30th day of October, 1907, the receivers Chandler and Thompson filed with this court a report in writing calling the attention of the court to the fact that Edgar L. Adler was not acting in harmony with them, to the end that the best results might be obtained for the benefit of the property intrusted to their care. The court had previously learned from Edgar L. Adler, through a telegram from him, and in face of the fact that the decree of the court had required that there should be a joint bond of all the receivers in the sum of $300,-000, that he had determined to make his bond separate and distinct

from the other receivers. The receivers, Adler, Chandler, and Thompson, appeared before this court at Huntsville, Ala., on the 1st day of November, 1907, and were examined orally as to their administration of the property and estate, and their ability to raise sufficient funds to keep the plants in operation. Edgar L. Adler was sworn, and testified, in answer to questions by counsel and also by this court, that neither he nor his brother, Morris Adler, could in any manner, nor would they, raise sufficient funds, to be obtained upon receivers' certificates, to pay the expense of keeping the plants of the bankrupt in operation, although their appointment as receivers had been urged upon the court, based upon the grounds that they would furnish such funds. Thereupon it was suggested that, by the addition of T. G. Bush to the number of receivers—who being a man known to the court for many years as a man of highest character and integrity, and a man having had experience in the management of all kinds of properties pertaining to this district, and a man of well-known financial ability—he could secure such funds as might be needed to properly finance the steel company and keep it in operation, so long as said operation might remain profitable. The court thereupon appointed T. G. Bush as the fourth receiver, and he was afterwards made chairman of the receivers. Upon the appointment of said Bush as said receiver all parties in interest, who were present before the court, including the receivers Adler, Chandler, and Thompson, were asked as to whether they had any objections to urge to the appointment of said Bush, and the court was thereupon informed that no objection could be made to his appointment from any source. These receivers immediately took charge of the property of the bankrupt, and secured such funds on receivers' certificates necessary to keep the plants of the Southern Steel Company in operation, which they continued to do, so long as the said operation proved profitable. These four receivers made a report to this court on the 12th day of December, 1907, in which with minutest detail they presented each and every act of theirs from the date of their appointment. Notice of the date fixed for the making of this report was given to all the creditors of the bankrupt corporation, and, without attempting to present the contents of that report, it is only necessary in this connection to state that the records of this court show that there has been no challenge of that report in any manner. After a reference to the special master of all the petitions and pleadings in this cause, together with all the facts involved in the various controversies, in which he was ordered to report his findings and the testimony to the court, his report was duly filed, and exceptions made thereto by the second petitioning creditors. All matters connected with these causes are now presented for the consideration of the court, all parties in interest being present in person or by counsel. No exceptions were taken or filed to the report of the special master by the Southern Steel Company, or by the first petitioning creditors, who had insisted upon the appointment of Morris and Edgar Adler as receivers. The second petitioning creditors now insist that the facts shown in evidence and as found by the special master in his report, as to collusion between the two Adlers and the bankrupt, make it imperative upon the

court to dismiss the first petition and to adjudicate upon their second petition. Among the facts relied upon to sustain this contention was the uncontroverted evidence that, a week or ten days before the petitions in bankruptcy were filed, J. D. Lacey, one of the directors of the respondent bankrupt, had arranged with Edgar L. Adler and his brother, Morris Adler, to act as receivers of the Southern Steel Company in case of necessity, and that when the necessity did arrive, and before the petition was presented to this court, the two Adlers, with the actual consent and knowledge of the bankrupt, allowed their names to be inserted in the first petition for receivers filed in this cause, and made bond prior to and in contemplation of their appointment. There is further evidence and admissions, shown by the testimony, tending to show collusion and an effort on the part of the bankrupt to control or participate in the management of its estate, even after it had been committed to the jurisdiction of this court. It is most vehemently urged, therefore, that in view of this evidence and admissions the bankrupt should not be adjudicated on the first petition, but that it should be dismissed, and an adjudication be had on the second petition.

There can be no question that in such cases as this, where it is shown that the appointment of a receiver or trustee in bankruptcy is brought about by active interference and procurement of the bankrupt, the appointment of the same will be set aside on proper petition and showing to the court, it matters not how high the character or capacity of the receiver or trustee may be who is so attempted to be procured by the bankrupt. As is said by Lochren, District Judge, in the case of In re Hanson (D. C.) 156 Fed. 717:

"It is well settled by all the authorities that the trustee represents the creditors, and not the bankrupt, in the administration of the estate; and that it is improper that the bankrupt shall actively interfere with the matter of his selection and appointment; and that if he does interfere, and the person aided by him is appointed by votes procured by such interference, the appointment should for that reason be disapproved. In re McGill, 106 Fed. 57, 45 C. C. A. 218; In re Rekersdres (D. C.) 108 Fed. 206; In re Henschel (D. C.) 109 Fed. 861."

What is said here as to the application of this principle to trustees must of course apply with much more force to receivers, for whom the court alone is responsible. Many cases to the same effect might be cited, and I have found none contrary to the principle announced in the Hanson Case, supra. The rule is based on sound reason, and is a salutary one. It often becomes the duty of the receiver directly to antagonize the bankrupt by efforts to discover secreted assets. Surely, then, there should be no color of basis for any suspicion of partiality or sense of obligation on the part of the receiver toward the bankrupt. While this is undoubtedly the law, and the contention made would have authorized the court to entirely disregard the request by the first petitioning creditors, as to the receivers Messrs. Adler, yet it is not sufficient cause to justify a setting aside of their petition at his time. The action of this court in disregarding in part their request as to receivers and in appointing three other receivers, who are entirely disinterested, purged those proceedings of

any collusive effect, growing out of the promotion of the Adlers by the bankrupt. There can be no question but that the bankrupt can act in harmony with creditors of his own selection for the purpose of surrendering his estate to the court, but the line is drawn when he attempts in any wise to interfere with or procure the appointment of a receiver or trustee. There has been no objection filed with reference to the appointment of any of the receivers in this cause, except as herein set forth. No act of theirs has been challenged by any party to this record. All of the parties in interest are now present before the court, and with surprising unanimity they admit and agree that the Southern Steel Company should be declared a bankrupt on one or the other of the grounds alleged in the pleadings. It may be that the act of bankruptcy averred in the first petition cannot be sustained as matter of law on the proof offered in support thereof. It is not necessary to decide that question here. That petition is in all respects regular on its face, and sufficiently avers an act of bankruptcy. Under that petition every order of this court has been made. The acts of bankruptcy averred under the amendment offered by the first petitioners are claimed to be sustained by the testimony, and are not denied. The application to amend this petition so that the same shall contain all the allegations of bankruptcy alleged in the second petition is granted. No objection being made, and after notice to all parties in interest in open court, all the proceedings in bankruptcy pending against the Southern Steel Company will be transferred to the Southern division of this district. And there being no objections interposed to the consolidation of all the said causes as amended such will be done, and these causes will proceed as one. The Southern Steel Company will be adjudged a bankrupt, and a decree will now be entered in accordance with this opinion. The special master, Sterling A. Wood, is hereby appointed special referee in bankruptcy in this cause. All other questions are reserved.