In re BARNETT.

(District Court, N. D. Georgia. February 16, 1914.)

No. 478.

BANKRUPTCY (§ 273*)—ADMINISTRATION OF ESTATE—DEPOSITS OF FUNDS OF ESTATE—EXEMPTIONS—WAIVER.

Where a trustee in bankruptcy, depositing the bankrupt's money to his own account or his firm's account, paid to the bankrupt the amount set apart as exempt under Civ. Code Ga. 1910, § 3413, as soon as set apart by the referee, creditors of the bankrupt, holding waivers ineffectual as waivers of the right to an exemption, could not require the trustee to deposit all moneys received as trustee in a bankruptcy depository, and not to disburse any money except on checks approved by the referee, and thereby require the trustee to redeposit the money paid out in good faith, though, where an exemption is set apart and money is ordered paid, it ought to remain long enough in the hands of the trustee to allow claimants an opportunity to be heard.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. § 273.*]

In Bankruptcy. In the matter of the bankruptcy of G. O. Barnett, bankrupt. Petition of J. C. Garlington and another against W. H. Coker, trustee. Action of referee approved and confirmed.

Harris & Harris, of Rome, Ga., for petitioners.
Lipscomb & Willingham, of Rome, Ga., for trustee.

NEWMAN, District Judge. This is a peculiar case, and yet I do not see how the referee could have done otherwise than he did, or how he could have made any other order on this petition. Mr. Coker, the trustee, had the bankrupt's money deposited to his own account or his

firm's account, but the money seems to have been kept and properly accounted for—the mistake being depositing it in the way indicated instead of in a regularly designated bankruptcy depository in his name as trustee.

The exemption allowed the bankrupt was evidently intended to be under section 3413 of the Code of Georgia, which provides that a debtor may have an exemption, in addition to wearing apparel, of $300 worth of household and kitchen furniture and provisions. This exemption was for household and kitchen furniture, $25, one cow, $20, and one hog, $5, and cash, $250. In an exemption such as provided in the section referred to, the debtor cannot waive or renounce his right to the same. That is to say, any waiver of it would be ineffectual to accomplish that purpose. Whether a debtor could have a part of it in cash, either before the ordinary or in the bankruptcy court, it is probably unnecessary now to determine.

The exemption was set apart to the bankrupt on May 19, 1913, and the $250 was immediately paid over, on the same day (19th), to the bankrupt's attorney. The record I have shows that the referee did not approve it until the 20th. Why it was done in this way, the record does not disclose. The record shows that the exemption of $300 was by consent of the trustee and the bankrupt.

The petition of the two creditors holding waivers, J. C. Garlington and J. C. Everett, is that W. H. Coker, as trustee of G. O. Barnett, bankrupt, be required to deposit all moneys he may have received as trustee of said G. O. Barnett since the date of his appointment and qualification, and that he be ordered not to disburse any of the money except upon checks approved by the referee. The record shows the purpose of the petition of Garlington and Everett is that he shall be required to repay and deposit in a bankruptcy depository the $250 which he has already paid to the bankrupt. I do not very well see how he could be required to do this. Of course his depositing the money with his firm's account was irregular and improper, but he paid the money to the bankrupt on the order of the referee, and the referee determined about it, and it seems to me correctly, that he ought not to be required to lose the $250 by depositing it in a bankruptcy depository, in fact paying it back again on the ground that he had paid it out improperly.

The referee's brief opinion on the matter is as follows:

"The above matter having come on for a hearing before the referee on the 12th day of August, 1913, all parties at interest on both sides being present. After hearing evidence and argument in said matter, it is the opinion of the referee that the plaintiffs in this petition, not having proved claims or become parties to the case, could not file objections to the homestead, and could not proceed against the trustee in the court in any manner in regard to said homestead. The referee further holds that, although at the time the trustee paid the $250 to G. O. Barnett on his homestead, he had not deposited the funds of the estate in his name as trustee in a bankruptcy depository; that said payment at the time was legal, so far as the bankrupt was concerned; and that the trustee is not required to redeposit said money so paid in a depository as trustee. Under instructions of the referee, the trustee has since deposited all the funds in his hands in the Cherokee National Bank of Rome, Ga., in the name of W. H. Coker, trustee. Therefore the referee declines to grant a rule nisi calling upon the trustee to so deposit said funds as trustee."

It will be seen that one of the grounds given by the referee for determining the matter as he did was that Garlington and Everett had not proven their claims in the bankruptcy court. Whether this was correct or not, he further finds that the trustee ought not to be required to redeposit the money paid out to the bankrupt under the referee's order.

The difficulty about the whole, matter was that, after the order for the exemption was passed, no time was allowed for any one to take steps to enforce any rights they may have had or claimed to have against the fund. I have frequently said that where a homestead exemption is set apart to the bankrupt, and especially where it was in money, it ought to remain long enough in the hands of the trustee to allow anyone having a claim against it to have an opportunity to enforce the same.

It appears from the record which I have in this case that an effort was made in the state court to reach this fund; that a receiver was appointed by the judge of the superior court; and that, Mr. Coker having failed to pay over the $250 to him, a rule was instituted against him to show cause why he should not be attached for contempt, and that Coker answered the same, setting up the fact that he had paid out the $250 on an order from the referee in bankruptcy, made on the 19th day of May, 1913, said order directing Coker, as trustee in said case, to pay to the bankrupt the sum of $250 in cash. Thereupon, after argument had and upon consideration of the matter, the rule against Coker was discharged by the judge of the superior court. So that the whole matter was apparently heard by the state court and determined against Garlington and Everett, the petitioners.

Whether Messrs. Garlington and Everett have any rights here that can be enforced in any other way it is not necessary to determine. I am clear, however, that the referee was right in not requiring Mr. Coker to redeposit the money paid out, as stated. The referee must necessarily have found that the whole matter was in good faith and without any wrongful intent on the part of Mr. W. H. Coker, the trustee. He says he had Mr. Coker, after this transaction, to deposit the bankrupt funds he had in the Cherokee National Bank, a designated depository, and he had done so.

It might not be improper to remark here that referees in bankruptcy should take the utmost care to see that receivers and trustees comply with the law in reference to the depositing of funds, and that they deposit all funds received by them in a regularly designated depository for bankruptcy funds. There are such depositories in all sections of this district that are always available to receivers and trustees, and deposits should be made in no instance elsewhere than in such designated depositories.

The action of the referee must be approved and confirmed; and it is so ordered