**R. J. REYNOLDS TOBACCO CO., Inc., et al., v. A. B. JONES CO., Inc., et al.**

**No. 9231.**

Circuit Court of Appeals, Eighth Circuit.

Dec. 4, 1931.

Horace Sloan, of Jonesboro, Ark. (H. M. Cooley and A. T. Welborn, both of Jonesboro, Ark., on the brief), for appellants.

Archer Wheatley, of Jonesboro, Ark. (N. F. Lamb and A. L. Adams, both of Jonesboro, Ark., on the brief), for appellees.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SANBORN, District Judge.

SANBORN; District Judge.

· On April 24, 1931, the R. J. Reynolds Tobacco Company, Turnbull Cone & Machine Company, and T. E. Brooks & Co. filed an involuntary petition in bankruptcy against the A. B. Jones Company, an Arkansas corporation engaged in the wholesale grocery business with its headquarters at Jonesboro, Ark., and with branches at Blytheville and Leachville. The petition charged insolvency, acts of bankruptcy within four months prior to the filing of the petition, stated that the assets of the Jones Company were of a perishable nature, that the appointment of a receiver was absolutely necessary, and asked that J. Q. Lane, of Jonesboro, be appointed receiver, and that the Jones Company be adjudged bankrupt. The petitioning creditors gave bond in the sum of $1,000, and J. Q. Lane was at once appointed receiver by the referee in bankruptcy, in the absence of the judge. He qualified by giving the $5,000 bond required by the order of appointment. On the same day, the Jones Company filed a petition to dismiss the receiver, on the ground that no bond as required by law was filed, before his appointment, by the petitioning creditors; that during 1930 the sales of the Jones Company amounted to $1,000,000, and during 1929 to $1,400,000; that its collections in 1929 were $1,448,000; that seventy-five persons were employed; that it had five hundred customers; that was not insolvent;

that, due to drought and financial conditions since the summer of 1930, it had not been able to collect cash sufficient to discharge current obligations as usual; that its officers believed that collections in the fall of 1931 would enable it to pay its past-due accounts and to carry on its business; that the $1,000 bond filed by the petitioning creditors was grossly inadequate; and that the Jones Company had already sustained irreparable damages from the filing of the petition. The petition asked that the receiver be discharged and the business returned to the officers of the company, or that, in the alternative, the petitioning creditors be required to give bond in the sum of $100,000, and that the receiver be directed to continue the business.

Upon this petition, and on April 25, 1931, the court found that it would be for the best interests of all concerned to continue the hearing of the petition for dismissal of the receiver, and to permit the Jones Company to give a forthcoming bond for $25,000 and be restored to possession of its property pending a hearing on the involuntary petition; that an inventory should be taken of the stock of merchandise on hand; that the business should be continued, the Jones Company to retain all funds coming into its hands pending final hearing; and that a statement of all assets and liabilities should be filed. The order entered provided that the forthcoming bond should run to J. Q. Lane, as receiver; that the statement of assets and liabilities should be filed with the inventory; that the bankrupt might use the proceeds of cash sales for continuing the business, but might incur no indebtedness; that the application for dismissal of the receiver be continued pending the final hearing; and that the property be surrendered by the receiver to the Jones Company. The forthcoming bond was given in accordance with the order, and the assets and business of the Jones Company restored to it.

On May 2, 1931, the Jones Company filed its answer, denying that the petitioning creditors were creditors, and denying that it was insolvent or had committed any acts of bankruptcy. It prayed that the involuntary petition be dismissed and that it have judgment against the petitioning creditors for $100,000 damages. The answer was verified by J. H. Hawthorne, president.

On May 22, 1931, the New Orleans Coffee Company, Limited, the United States Tobacco Company, and the Chicago Macaroni Company, asserting that they were unsecured creditors of the alleged bankrupt, joined the petitioning creditors in praying for an adjudication.

On the same day, the Jones Company filed a statement of assets and liabilities as of April 25, 1931, as shown by this statement.

| | | | |
|---|---|---|---|
| The total assets were, | | | $654,345.07 |
| Consisting of— | | | |
| Cash | | $ 1,510 40 | |
| Accounts receivable, unsecured | $273,033 03 | | |
| Notes receivable | 8,736 50 | | |
| Accounts receivable secured by real estate mortgages and notes | 23,791 44 | | |
| Accounts receivable secured by chattel mortgages, stocks and notes | 28,638 49 | | |
| Accounts receivable secured by real estate deeds and notes | 144,177 74 | | |
| Total notes and accounts receivable | | $478,377 20 | |
| Merchandise inventories | | 44,809 65 | |
| Real estate | $114,955 67 | | |
| Office and warehouse equipment | 8,492 15 | | |
| Automobile and truck equipment | 6,200 00 | 129,647 82 | |
| Liabilities, total | | | $184,787 91 |
| consisting of— | | | |
| Accounts payable | | $ 65,982 86 | |
| Bank overdrafts | | 13,710 96 | |
| Notes payable, due banks | | 73,594 09 | |
| Notes payable, due brokers | | 22,500 00 | |
| Bonds on West Memphis Building | | 9,000 00 | |

The petitioning creditors (including those who joined in the involuntary petition), on May 25, 1931, moved the court to require the Jones Company to annex to its answer an itemized schedule of its assets and liabilities as a bill of particulars, to enable them to prepare their case for trial, since the statement of assets and liabilities already filed failed to give any detailed information. The Jones Company filed a response to this motion, denying that the petitioning creditors had any right to any more information than was furnished. The motion for a bill of particulars was denied by the court on the same day. The court then, upon motion of the Jones Company, required the creditors to make the allegations of their petition more definite and certain, which they did on May 27, 1931, by filing an amendment to the involuntary petition. To this amendment the Jones Company made answer on June 1, 1931, denying its allegations.

On June 2, 1931, the receiver, Mr. Lane,

applied for an examination of certain officers of the Jones Company under section 21a of the Bankruptcy Act (11 USCA § 44(a), asserting, among other things, that by a financial statement as of December 31, 1930, the company had shown merchandise on hand of $129,562.53, whereas the inventory filed with the court showed merchandise at $44,809.65, a decrease of almost two-thirds within four months' time, without any corresponding increase in other assets, and an increase in liabilities, the statement of December 31, 1930, showing total liabilities of $184,471.02, as against $184,787.91 total liabilities as of April 25, 1931; that the receiver should inform himself as to what had caused the decrease in merchandise inventory; that the receiver believed that the Jones Company was interested in thirteen retail grocery stores in Jonesboro known as Martin Cash Stores and in other stores at other points; that it was essential that he be informed as to the actual facts with reference to the ownership of these stores, for the protection of creditors. The granting of this application was opposed by the Jones Company in a response verified by Mr. Hawthorne, which asserted that the retail stores referred to were customers of and debtors to the Jones Company.

On June 3, 1931, the court entered the following order:

"This cause was today, June 3, 1931, submitted. Being advised in the premises from the entire files and record and argument of counsel the court is of opinion and finds that on account of the congested condition of the docket a trial of the question of solvency of said alleged bankrupt cannot be had at the present term of the court; that the assets of A. B. Jones Company consist largely of merchandise, accounts receivable, and real estate; that unless the business is continued as that of a going concern there will be a great loss and sacrifice with respect to the value of said merchandise and accounts receivable; that owing to the general financial depression there is no market at this time for said real estate, and it is to the best interest of all parties in interest that a receiver be appointed to take charge of said assets and conduct and operate the business; that J. H. Hawthorne, president of the Company, and who has been in active charge of its interest and affairs for several years past, is best qualified to continue in charge thereof and should be appointed receiver; that J. Q. Lane, appointed receiver herein by the Referee in Bankruptcy should be discharged.

"It is, therefore, by the Court considered, ordered, adjudged, and decreed that J. H. Hawthorne be and he is hereby appointed as receiver in this cause of all the assets of A. B. Jones Company, a corporation, and as such, he is hereby directed and authorized to continue to conduct and operate the business of said Company with right and authority to purchase and sell merchandise in usual course so far as practicable, to collect all debts owing to the Company and if necessary to institute suits for that purpose; and that in general said Hawthorne, as such receiver, may do and perform all things usual and incident to the conduct and operation of said business.

"Said Receiver is directed to have the audit heretofore commenced completed by a certified public accountant and filed with the court within thirty days from this date.

"That before entering upon his duties as such receiver he file in this court the proper oath and execute a bond in the sum of $50,000.00 with proper surety or sureties to be approved by the Clerk of this Court."

To this order the petitioning creditors took exception.

On June 4, 1931, Mr. Hawthorne, as receiver, filed what is called a report, petitioning for authority to issue receiver's certificates aggregating $5,719 for the purpose of paying $1,100 of insurance, $3,300 taxes, $900 interest on mortgages, $175 payment due on contract for purchase of real estate, and $244 rent items; and for authority to issue additional certificates for the purchase of goods, wares, and merchandise to be sold in the regular course of business, stating that he believed that $25,000, in addition to the $5,719, would be sufficient to carry on the business and discount the bills. To this report, the creditors filed exceptions on various grounds, among others, that there was no evidence to justify the court in creating claims which would be preferred, and no justification for allowing the receiver to continue the business as usual.

On June 5, 1931, the court denied the petition of Mr. Lane to examine the officers of the Jones Company under section 21a of the Bankruptcy Act (11 USCA § 44(a). On the same day the court authorized Mr. Hawthorne, as receiver, to issue receiver's certificates to the extent of $31,000, payable to bearer and passing by delivery, and to be a first lien upon all of the assets of the Jones Company, the proceeds of the certificates to be used for the payment of certain specific items and to purchase merchandise on as eco-

nomical a basis as possible for carrying on the business. The order recited: "He may have a contingent account not exceeding $500.00 in amount at any one time, and out of which he may pay incidental expenses and for sundry merchandise in small quantities received on a cash delivery basis, rendering detailed itemized statement each month of the things done by him and file same in the office of the Clerk of this Court. The Receiver shall in general use the specified depository bank or banks for the deposit of monies in his hands, but for convenience and economy when deemed proper and necessary by him may deposit funds in other banks." To this order, the petitioning creditors took exception.

J. H. Hawthorne was at all times president of the Jones Company, one of its directors, and one of its counsel. He verified the answers and responses filed by it in these proceedings.

▆▆▆ The appellants contend that the court erred in removing Lane as receiver, in appointing Hawthorne to succeed him, in authorizing Hawthorne to continue the business, in not requiring the filing of a complete inventory, in authorizing the issuance of receiver's certificates, in authorizing a contingent account, in authorizing deposits in other than designated depositories, in authorizing the issuance of receiver's certificates payable to bearer, and in denying the right of Lane to an examination under section 21a.

The orders complained of by the appellants are, without exception, such as lie within the sound discretion of the court of bankruptcy. With respect to the making of such orders, all that this court may do is to determine whether there was an abuse of discretion.

In passing upon such of the questions presented as are important, it should be noted:

▆▆▆ That the filing of the petition in bankruptcy operated to place the property of the alleged bankrupt in custodia legis, and prevented any creditor from attaching it, and brought the estate under the control of the court with a view to its ultimate distribution among creditors. Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 307, 32 S. Ct. 96, 56 L. Ed. 208; Cameron v. United States, 231 U. S. 710, 34 S. Ct. 244, 58 L. Ed. 448.

▆▆▆ That a receiver in bankruptcy, who is to be appointed only when absolutely necessary and for a limited period, and who is ordinarily but a mere custodian, should be entirely without interest or embarrassing connection so far as any party to the bankruptcy proceeding is concerned. Gamble v. Daniel (C. C. A.) 39 F.(2d) 447; Birmingham Coal & Iron Co. v. Southern Steel Co. (D. C.) 160 F. 212.

▆▆▆ That it is the duty of a bankruptcy court promptly to determine the question of adjudication, to proceed with the selection of a trustee if there is an adjudication, and to administer and distribute the estate, as required by the Bankruptcy Act. Acme Harvester Co. v. Beekman Lumber Co., supra, 222 U. S. 309, 32 S. Ct. 96, 56 L. Ed. 208.

▆▆▆ So far as the removal of Mr. Lane as receiver is concerned, it is not clear that there was any abuse of discretion. Lane was nominated by the creditors, and the only purpose which he served up to the time of his removal was as obligee under the forthcoming bond. The question of his suitability and impartiality was for the court of bankruptcy. The necessity of his appointment and the propriety of his continuing to act after the court determined that a receiver should take over the alleged bankrupt's property and continue its business were peculiarly questions to be determined by that court.

▆▆▆ It is obvious, however, that Mr. Hawthorne was not a suitable person to be appointed receiver in place of Mr. Lane, regardless of whether he could carry on the business of the Jones Company to better advantage than any other person or not. He had embarrassing connections, and would necessarily be regarded by the creditors as a hostile receiver. His attitude toward them had been antagonistic from the first. As already stated, he was president and director of and attorney for the alleged bankrupt. He had at first opposed any administration of the assets of the company under the Bankruptcy Act (11 USCA), although admitting the inability of his company to meet its obligations. He had also opposed the creditors' receiving detailed information as to the financial condition of his company. In that connection, it may properly be said that the statement of assets and liabilities filed by the company indicated anything but a sound financial condition. The accounts and notes receivable, which it is fair to assume represent the proceeds of sales of merchandise, amount to more than ten times the value of the stock

335

in trade, which is only about one-fifteenth of the total assets. Total merchandise and cash are less than one-fourth of total liabilities. While the statement does not show whether the accounts and notes are due or past due, collectible or uncollectible, it might fairly be assumed that, since there are $13,000 of bank overdrafts, these accounts were not highly regarded as collateral, and may be worth only a small percentage of their face value. This assumption is further fortified by the fact that Mr. Hawthorne, after becoming receiver, found it necessary to apply for permission to issue receiver's certificates to finance the further conduct of the business, indicating that current receipts were not sufficient to take care of the current expenditures.

So far as the denial of an examination of the officers of the Jones Company under section 21a of the Bankruptcy Act is concerned, it will be noted that the denial took place after the removal of Mr. Lane as receiver. Since another receiver must be appointed in place of Mr. Hawthorne, we would have no right to assume that, upon a proper application and showing, the court would deny him the right of an examination. The right of a receiver in bankruptcy to apply for such an order prior to adjudication is settled by Cameron v. United States, supra, in which the court said (page 717 of 231 U. S., 34 S. Ct. 244, 246): "The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved." Although the court may order such an examination before adjudication, it should not be allowed to be used by the creditors solely to obtain information useful in supporting an involuntary petition upon the hearing as to adjudication. Rawlins v. Hall-Epps Clothing Co. (C. C. A.) 217 F. 884; Abbott v. Wauchula Mfg. & Timber Co. (C. C. A.) 229 F. 677; In re Stell (D. C.) 269 F. 1008; In re Rodgers-Meyers Furniture Co. (D. C.) 43 F. (2d) 1000; Collier on Bankruptcy (13th Ed.) p. 721.

With respect to the receiver's certificates—we are not advised whether any such certificates have actually been issued. If they have not, the question of the propriety of the order authorizing them and their form is unimportant, in view of our disposition of this case. The receiver who succeeds Mr. Hawthorne will issue no certificates, unless authorized by the court so to do, and, if any

certificates have been issued and sold, the holders of those certificates should be given an opportunity to be heard with respect to their validity. It has been held, however, that receivers' certificates are not negotiable instruments under the law merchant, even where the order of court authorizing them attempted to make them so. Bernard v. Union Trust Co. (C. C. A.) 159 F. 620, 623, 16 L. R. A. (N. S.) 1118.

A receiver in bankruptcy authorized to operate a business must necessarily be allowed reasonable latitude with respect to the amount of money to be kept on hand to meet current expenses, but we are of the opinion that receivers in bankruptcy, even before adjudication—like trustees in bankruptcy—are required to deposit funds in depositories designated under section 61 of the Bankruptcy Act (11 USCA § 101), to be withdrawn substantially as provided in General Order XXIX (11 USCA § 53). We find no case directly in point, but we think that money coming into the hands of such receivers is "money of bankrupt estates" within the spirit of the act. In Morris v. Carnegie Trust Co., 154 App. Div. 596, 139 N. Y. S. 969, 970, 29 A. B. R. 884, it was held that funds deposited by a receiver or trustee in bankruptcy in a designated depository were "money paid into court" within the meaning of the New York Banking Law, and that a claim therefor was entitled to a preference. The court in In re Barnett, 214 F. 263, 265 (D. C. Ga.), said: "It might not be improper to remark here that referees in bankruptcy should take the utmost care to see that receivers and trustees comply with the law in reference to the depositing of funds, and that they deposit all funds received by them in a regularly designated depository for bankruptcy funds." It is true that General Order XXIX (11 USCA § 53) does not mention receivers; but it does provide that no moneys deposited as required by the act shall be withdrawn except in the manner specified. We believe that it was intended that funds in the hands of receivers in bankruptcy should be surrounded by the same safeguards as those in the hands of trustees in bankruptcy. It follows, therefore, that no authority should have been granted to the receiver to deposit funds in other than designated depositories. So far as we are advised, however, this was error without prejudice.

Some capable and disinterested person should be appointed to succeed Mr. Hawthorne as receiver. He should proceed at once to make a complete inventory and ap-

praisal of the assets, and to determine the financial condition of the estate. The question of the propriety of permitting such receiver to further continue the business and to issue receiver's certificates should be heard and determined promptly. Authority to continue the business, except possibly for the brief period which may be necessary for a determination of the financial condition of the company and the proper method to pursue in the administration of its affairs, as well as authority to issue receiver's certificates, should only be granted upon convincing proof that such a course would be of definite advantage to the estate. On the question as to who should be selected to succeed Mr. Hawthorne, the parties in interest should be given an opportunity to be heard.

The court should also proceed to determine the question of adjudication as soon as that can be done.

The order appointing J. H. Hawthorne as receiver of the alleged bankrupt is reversed, and this case is remanded for further proceedings not inconsistent with this opinion. The mandate may issue forthwith.