### In re ROBINETTE.

District Court, W. D. Virginia.

Feb. 17, 1932.

W. A. Wells, of Appalachia, Va., and H. M. Bandy, of Norton, Va., for bankrupt.

H. J. Kiser, of Wise, Va., and George L. Taylor, of Big Stone Gap, Va., for creditors.

PAUL, District Judge.

This matter is before the Court on review of an order of the Referee in Bankruptcy disallowing certain claims of the bankrupt to the homestead exemption.

It appears that counsel for the bankrupt, who excepted to the rulings of the referee, have not followed the provisions of Rule No. 18 of the bankruptcy rules of this court, in which there is set forth the procedure for the review of the rulings of the referee.

The order of the referee to which objection is made was entered on November 25, 1931, and within ten days thereafter, objecting counsel should have filed with the referee, a petition for review of that order, and the other provisions of the rule relating to such review should have been complied with. It is true that counsel for the bankrupt had, previous to the entry of the order of November 25, 1931, at a meeting held before the referee, excepted to certain rulings of the referee and caused these exceptions to be noted in the record, but it is not thought this fact excused them from failure to file within the specified time, a petition for review of the order of November 25, 1931, which contained the formal action of the referee upon the questions in dispute; and the referee would have been within his rights in refusing to transmit the papers to this court for review.

The above statement is not meant to imply any criticism of the referee, but simply to emphasize the necessity that counsel should follow literally the provisions of bankruptcy rule 18 in seeking a review of the referee's findings. The referee is to be commended for his willingness to have any of his actions passed on by the court, and his desire that counsel should not feel that they had lost any rights by his insistence upon technical rules of court.

During the month of January, 1931, E. M. Robinette, who was engaged in the mercantile business, suffered certain judgments to be obtained against him upon which execution was issued and the fixtures and a stock of goods in his store were sold by a deputy sheriff in bulk for the sum of $690. It appears the deputy sheriff did not disburse this money to the execution creditors, and that the fund was still in the hands of the deputy sheriff when, on April 15, 1931, an involuntary petition in bankruptcy was filed against Robinette. Process was had on this petition and on the 23rd day of April, 1931, after service of process had been made on Robinette, he filed in the clerk's office of Wise County, Va., his declaration of homestead exemption as provided by Sections 6531 and following of the Code of Virginia 1919. This declaration of homestead claimed as exempt the money in the hands of the deputy sheriff, being the proceeds of the execution sales of the stock of goods and fixtures of his store and in certain accounts and notes due him, but not described in detail. On April 25, Robinette filed his answer to the involuntary petition against him in which answer he also makes claim of his homestead exemption in the property mentioned. On May 6, 1931, Robinette was duly adjudged a bankrupt and on May 19th he filed his schedules in which he again sets out that he claims the property mentioned as exempt to him.

On May 30, 1931, the bankrupt made another declaration of homestead recorded in the clerk's office of Wise County, which is referred to as an amended homestead, and in which he attempts to set aside as exempt certain property which was not mentioned or included in the first instrument which he had filed. Sometime later, after various meetings in the bankruptcy proceedings, the bankrupt offered to file still another declaration of homestead which he termed his "second amended homestead."

Objection was made by counsel for the creditors to the allowance of any homestead exemption. These objections seem to have been based mainly on the following grounds: (1) That the stock of goods and the fixtures, in the proceeds of which the bankrupt attempted to claim a homestead, had not been paid for and that under the Virginia statute, the homestead could not be claimed as against the purchase price of the property; (2) that the stock of goods had been what is known as a "shifting stock" of merchandise, in which the bankrupt could not have claimed the homestead exemption, and that he was not entitled to claim it in the proceeds from the sale of such stock of goods; (3) that the funds in the hands of the sheriff was not such property of the bankrupt as entitled him to claim a homestead in it in that it had already passed from his custody and control several months before; (4) that the accounts and notes in which the exemption was claimed were not described with the particularity required by the Statute; and (5) that all the declarations and attempted declarations of homestead came too late, in that all of them were made after the filing of the petition in bankruptcy against him.

The referee apparently sustained the views of the creditors in respect to all of the various contentions made by them. In this I think that the referee was probably correct except possibly that under (1) above, a successful attempt could probably have been made to separate the property unpaid for from that which had been paid for; and under (2) above, it would, in my opinion, have been incorrect to include the fixtures as part of a shifting stock of merchandise. If no other consideration existed and the refusal to recognize the claim of homestead exemption had been based solely on the two conditions suggested, I think that a rejection of the claim of homestead in its entirety would have been erroneous.

However, without going into any extended study or discussion of the first four objections to the allowance of the homestead, it seems to me that the whole question raised in this case can be settled by a determination of the question noted as (5) above, and which was to the effect that any claim of homestead, to have been honored, must have been declared previous to the filing of the petition in bankruptcy. Because of its bearing upon future similar

cases, this question seems to merit discussion.

Section 7 of the Bankruptcy Act (U.S. Code, Title 11, Sect. 25, 11 U.S.C.A. § 25), in setting forth the duties and obligations of the bankrupt, provides, among other things, subdivision a, Clause 8, that the bankrupt shall "prepare, make oath to, and file in court within ten days after adjudication, if an involuntary bankrupt * * * a schedule of his property [etc.] and a claim for such exemptions, as he may be entitled to * * *."

(The schedules here were not filed until May 19, 1931, slightly more than ten days after adjudication, but were accepted apparently without question and it seems that no question is raised as to the propriety of this.)

I think it is settled that the language of the above quoted section does not mean that the bankrupt has ten days after adjudication within which to take any action necessary to establish or perfect an exemption. It does not mean that a bankrupt can wait for ten days after adjudication before taking the steps necessary to secure to himself the benefits of the homestead exemption. Under the Virginia statute, the homestead exemption is not absolute. It exists only when and after the debtor has claimed it and perfected it by recordation in the clerk's office of an instrument setting forth his claim and giving a description and valuation of the property claimed as homestead. Va.Code 1919, Sects. 6531, 6532, 6540. Until the debtor has taken the steps prescribed by the statute, he is not entitled to any homestead exemption.

The provisions of the quoted portion of Section 7 of the Bankruptcy Act, seem to mean that the bankrupt has ten days from adjudiction within which to point out, designate, or claim such exemptions as he may wish to claim—the right to such exemptions having theretofore been fixed or established, either by express statutory provision (as in the case of what is known as the "Poor Debtor's Exemption") or by some act of the debtor establishing and determining the exemption (as in the case of the Homestead Exemption.) The fact that a bankrupt, in his schedules, states that he claims certain property under the homestead exemption is not, in my opinion, sufficient to secure it to him. He must in fact have recorded his claim or deed of homestead in the manner and form provided by the statute.

The above view is indicated by numerous decisions, some of which will be hereinafter referred to. It then becomes important to determine, in cases of this sort, the time at which the bankrupt must have perfected and fixed his claim of homestead exemption in order that it may be available for his benefit.

The case of White v. Stump, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301, is referred to by each of opposing counsel in support of their respective contentions. This case was one arising under a statute of the state of Idaho, a statute apparently similar to that in this state, in that it required that a claim or declaration of homestead must be executed, acknowledged and recorded in order to be available to the debtor. This particular case was one of voluntary bankruptcy where no declaration of homestead was made and filed until some time after adjudication in bankruptcy. The Court held that the bankrupt was not entitled to the homestead exemption, and in the course of the opinion the following language is used:

"The Bankruptcy Law does not directly grant or define any exemptions, but directs, in section 6, that the bankrupt be allowed the exemptions 'prescribed by the state laws in force at the time of the filing of the petition'; in other words, it makes the state laws existing when the petition is filed the measure of the right to exemptions. It further provides that a voluntary bankrupt shall claim the exemptions to which he is entitled in a schedule filed 'with the petition,' and an involuntary bankrupt shall claim his in a schedule filed within 10 days after the adjudication, unless further time be granted (section 7, cl. 8); that the trustee shall set apart the exempt property and report the same to the court as soon as practicable after his appointment (section 47a, cl. 11); that the trustee shall be vested by operation of law with the title of the bankrupt to all property, in so far as it is not exempt, which 'prior to the filing of the petition' he could by any means have transferred or which might have [been] levied upon and sold under judicial process (section 70a; and that the bankrupt shall be given a discharge releasing him from debts owing 'at the time of the filing of the petition' (sections 17 and 63).

"These and other provisions of the Bankruptcy Law show that the point of time which is to separate the old situation from

the new in the bankrupt's affairs is the date when the petition is filed. This has been recognized in our decisions. Thus we have said that the law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed (Everett v. Judson, 228 U. S. 474, 479, 33 S.Ct. 568, 57 L.Ed. 927, 46 L.R.A.,N.S., 154), and that 'it is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court' (Bailey v. Baker Ice Machine Co. 239 U.S. 268, 275, 36 S.Ct. 50, 54, 60 L.Ed. 275; Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 307, 32 S.Ct. 96, 56 L.Ed. 208). When the law speaks of property which is exempt and of rights to exemptions, it of course refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors and the trustee in other particulars are fixed. The provisions before cited show—some expressly and others impliedly —that one common point of time is intended and that it is the date of the filing of the petition. The bankrupt's right to control and dispose of the estate terminates as of that time, save only as to 'property which is exempt.' Section 70a. The exception, as its words and the context show, is not of property which would or might be exempt if some condition not performed were performed, but of property to which there is under the state law a present right of exemption—one which withdraws the property from levy and sale under judicial process.

"The land in question here was not in that situation when the petition was filed. It was not then exempt under the state law, but was subject to levy and sale. One of the conditions on which it might have been rendered exempt had not been performed. Under the state law the fact that the other conditions were present did not suffice. The concurring presence of all was necessary to create a homestead exemption."

The above quoted language would seem to support the view, heretofore expressed, that the mere statement in the schedules that the homestead exemption is claimed, is not sufficient to avail the bankrupt of this exemption unless, at or before the filing of the schedules, the exemption has been declared or perfected in the manner prescribed by the statute.

■ This case also seems definitely to dispose of the contention regarding the declaration of homestead which Robinette caused to be recorded on May 30, 1931. This claim was filed forty-five days after the petition in bankruptcy was filed against Robinette and over three weeks after his adjudication. It attempted to claim the homestead in property not named in the first claim recorded, and not designated or claimed in the schedules as exempt. It plainly came too late and the referee was right in refusing to recognize this declaration or claim of May 30, 1931. The attempt, even later, to file a third claim of homestead was, of course, rightfully rejected.

There then remains the question as to whether the first claim of homestead was declared or perfected in time—this being the declaration recorded in the clerk's office on April 23, 1931, about a week after the involuntary petition had been filed and after process had been served on the bankrupt, but before the bankrupt had answered and several weeks before the adjudication and before the schedules were filed.

In the matter of Youngstrom, 8 Cir., 153 F. 98, 101, the proceeding was on an involuntary petition. After the adjudication had taken place and after the trustee had qualified, an attempt was made to claim the homestead in certain real estate. In this case also the state (Colorado) statute provides that a homestead exemption must be declared or perfected by certain entries in the office where title to the land was recorded, and to this extent is similar to the Virginia statute.

The Court in this case (Youngstrom) says, in part: "The present case, however, presents the question: At what point of time must the bankrupt be entitled to a particular exemption under the state laws to have it allowed and set apart under the saving and protecting provisions of the bankruptcy act? The answer must, of course, be found in that act. Naturally, it would be expected that this point of time would not be later than the date as of which the general estate of the bankrupt is wrested from his dominion and vested in his trustee for the benefit of the creditors. And such, we think, is actually and plainly the effect of the provisions before set forth.

Thus it is declared, in section 6, that the exemptions to be allowed are those prescribed by the state laws in force 'at the time of the filing of the petition,' and, in section 70a, that, upon his appointment and qualification, the trustee shall be vested, by operation of law, with the title of the bankrupt, 'as of the date he was adjudged a bankrupt,' to all property, not exempt, which 'prior to the filing of the petition' he could by any means have transferred, or, which might have been levied upon and sold under judicial process against him. Other provisions strengthen this view, notably the requirement of section 7, cl. 8, that a voluntary bankrupt shall claim his exemptions at the time of filing his petition and that an involuntary bankrupt shall claim them within 10 days after the adjudication, unless further time is granted. Indeed, we think the statute admits of doubt only in respect of whether the right to any claimed exemption is to be determined as of the time of the filing of the petition or as of the time when the debtor was adjudged a bankrupt. That it is to be determined as of the earlier date is suggested by those provisions of section 6, section 7, cl. 8, and section 70a, cl. 5, which make the time of the filing of the petition of special significance, and that it is to be determined as of the later date is suggested by the provision in section 70a that the trustee shall be vested with the title of the bankrupt as of the date he was adjudged a bankrupt. But, as the facts of the present case do not require that we determine this matter, we pass, observing, first, that the present act differs from that of 1867 in that by section 14 of the latter the trustee became vested with the title of the bankrupt as of the date of the commencement of the proceedings; and, second, that the Circuit Court of Appeals of the Seventh Circuit seems to regard the date when the debtor was adjudged a bankrupt as controlling, as is shown in Re Mayer, 108 F. 599, 608, 47 C.C.A. 512, 521."

And further says:

"We conclude that a claimed exemption otherwise recognized by the state laws, but to which the bankrupt had not become entitled at the time of the filing of the petition or at the time he was adjudged a bankrupt, is not within the saving and protecting clauses of the bankruptcy act, and cannot be allowed or set apart thereunder.

"Was the bankrupt or his family entitled to the homestead exemption here asserted at either of these times? The answer must be found in the state statutes before set forth and the decisions of the Supreme Court of the state interpreting them. Repeated decisions of that court are to the effect that the purpose of these statutes is to preserve the home for the family, and, to that end, to protect it from alienation by one spouse without the concurrence of the other, and also from execution or attachment arising from any debt, contract, or civil obligation; that no one is entitled to the protection and benefits of these statutes until the premises are designated as a homestead upon the margin of the record title as prescribed in section 2132, supra; and that this designation is effective only from the time it is made, and has no retrospective operation. Drake v. Root, 2 Colo. 685; Wells v. Caywood, 3 Colo. 487; Barnett v. Knight, 7 Colo. 365, 3 P. 747; Jones v. Olson, 17 Colo.App. 144, 67 P. 349; Goodwin v. Colorado Mortgage & Investment Co., 110 U.S. 1, 5, 3 S.Ct. 473, 28 L.Ed. 47.

\* \* \* \* \*

"The premises in controversy were not so designated until after the time of the filing of the petition and after the time when the owner was adjudged a bankrupt, so neither he nor his family was entitled to a homestead exemption therein at either of these times.

\* \* \* \* \*

"At the time of the filing of the petition and at the time the debtor was adjudged a bankrupt, as also at the time of the appointment and qualification of the trustee, the premises in controversy had not been designated as a homestead. In the absence of such a designation, they were not exempt under the state law. Prior to the filing of the petition the bankrupt had full power to dispose of them, and they could have been levied upon and sold under judicial process against him. They, therefore, came plainly within the terms of section 70a as property which vested in the trustee, by operation of law, upon his appointment and qualification, so the claim to a homestead exemption was rightly denied."

Neither the case of White v. Stump or the Youngstrom case present a situation identical with that in the case here under consideration. In White v. Stump a voluntary bankrupt attempted to claim the homestead after adjudication had taken place. In the Youngstrom case an involuntary bankrupt tried the same thing. In

neither of these cases was the Court called on to decide the direct question of whether an involuntary bankrupt has the right to file a claim of homestead after the date of the filing of the petition against him but before he has been adjudicated or has filed his schedules. The Youngstrom case, in the opinion quoted above, mentions just such a situation, but declines to pass upon it. And I have found no case of authority on this exact point.

Both White v. Stump and the Youngstrom case, however, make it perfectly clear that, where a statute provides, in order to secure the homestead exemption, that the debtor must declare or perfect the exemption by a formal recordation thereof in a designated office, he is not entitled to such exemption unless and until he has taken the action directed. It is equally clear that his right to the exemption must be determined as of the time when he completes the formal steps directed by the statute to be taken.

Our question is this: On April 23, 1931, when Robinette filed his declaration of homestead in the clerk's office, did he have such control or dominion over his property as to permit him to make this claim. As previously stated, neither of the cases cited above settle this point directly, and the Bankruptcy Act contains conflicting and confusing provisions thereto. But the argument of the opinions in both White v. Stump and the Youngstrom case indicate the view that in any bankruptcy case, the right of control and dominion over the property as between the bankrupt and his trustee relates to the time of the filing of the petition; and they seem to make no distinction in this respect as between voluntary and involuntary cases.

In White v. Stump, supra, the Court, after quoting certain provisions of the Bankruptcy Act, says (266 U.S. page 313, 45 S.Ct. page 104, 69 L.Ed. 301): "These and other provisions of the Bankruptcy Law show that the point of time which is to separate the old situation from the new in the bankrupt's affairs is the date when the petition is filed. This has been recognized in our decisions. Thus we have said that the law discloses a purpose 'to fix the line of cleavage' with special regard to the conditions existing when the petition is filed (Everett v. Judson, 228 U.S. 474, 479, 33 S.Ct. 568, 57 L.Ed. 927, 46 L.R.A.,N.S., 154), and that 'It is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed and that his estate passes actually or potentially into the control of the bankruptcy court' (Bailey v. Baker Ice Machine Co. 239 U.S. 268, 275, 36 S.Ct. 50, 54, 60 L. Ed. 275".

In the Youngstrom case, the same view is presented, and respecting an involuntary case, the following quotation is made from the case of International Bank v. Sherman, 101 U.S. 403, 25 L.Ed. 866: " 'The filing of the petition was a caveat to all the world. It was in effect an attachment and injunction. Thereafter all the property rights of the debtor were ipso facto in abeyance until the final adjudication. If that were in his favor, they revived and were again in full force. If it were against him, they were extinguished as to him, and vested in the assignee for the purposes of the trust with which he was charged. The bankrupt became, as it were, for many purposes, civiliter mortuus. Those who dealt with his property in the interval between the filing of the petition and the final adjudication did so at their peril. They could limit neither the power of the court nor the effect of the final exercise of its jurisdiction. With the intermediate steps they had nothing to do. The time of the filing of the petition and the final result alone concerned them.' "

While the case of International Bank v. Sherman arose under the Bankrupt Law of 1867, it is cited and quoted in support of this very question in the case of Mueller v. Nugent, 184 U.S. 1, 22 S.Ct. 269, 46 L.Ed. 405, arising under the present law; in which latter case it is stated that the effect of the filing of the petition is the same under the present law as under the Act of 1867.

The provisions of the Bankruptcy Act itself are somewhat confusing as to the question here involved (see Sect. 6, Sect. 7, sub. a, Cl. 8, Sect. 47, Sect. 70, sub. a, 11 U.S.C.A. §§ 24, 25, sub. a(8), 75, 110, sub. a). A discussion of these provisions is found in the opinions heretofore quoted from and no further attempt to analyze them here would aid in clarifying their meaning.

See also Acme Harvester Co. v. Beekman Lumber Co., supra, 222 U.S. page 307, 32 S.Ct. page 99, 56 L.Ed. 208, where it is said: "The filing of the petition is an assertation of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and disposition of his estate. The exclusive jurisdiction * * *

is so far in rem that the estate is regarded as in custodia legis from the filing of the petition. It is true that under § 70a of the act of 1898 the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt; but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law if an adjudication in bankruptcy shall follow the beginning of the proceedings."

A case which seems strongly in point on our question here is that of Everett, Trustee v. Judson, 228 U.S. 474, 33 S.Ct. 568, 569, 57 L.Ed. 927, 46 L.R.A.,N.S., 154.

This case did not involve exemptions, but it did involve determination of the point of time with reference to which the trustee becomes vested with title to the property in an involuntary case; and the facts are similar to the present case, in that the happening or event upon which the conflicting claims are based occurred between the filing of the involuntary petition and the subsequent adjudication.

An involuntary petition was filed against Judson on December 17, at which time he was the owner of certain life insurance policies, payable to his executors, administrators or assigns. On January 4 Judson died, and on January 9 he was adjudged bankrupt on the petition previously filed against him. The question arose as to whether the trustee in bankruptcy was entitled to the full proceeds of the amount of the insurance policies which were payable (because of Judson's death) at the date of adjudication, or whether the trustee was entitled to receive only such amount as represented their cash surrender value at the date of the filing of the petition. The Court held the latter view, stating that the time when the interest of the bankrupt estate in the policies passed to the trustee was the date of the filing of the petition and that the interest of the trustee in the policies extended only to their cash surrender value, citing Burlingham v. Crouse, 2 Cir., 181 F. 479 and Id., 228 U.S. 459, 33 S.Ct. 564, 57 L.Ed. 920, 46 L.R.A.,N.S., 148.

The Court says in part:

"The present case has, however, a feature not directly involved in the case of Burlingham v. Crouse, because Judson, the insured, committed suicide before the adjudication in bankruptcy, although after the filing of the petition, and it is the contention of the petitioner that the bankruptcy act vested the title to the property in the trustee as of the time of the adjudication, and that the death of the bankrupt between the filing of the petition and the date of the adjudication made the proceeds of the policies assets in the hands of the trustee.

"While it is true that § 70a provides that the trustee, upon his appointment and qualification, becomes vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, there are other provisions of the statute which, we think, evidence the intention to vest in the trustee the title to such property as it was at the time of the filing of the petition. This subject was considered in Acme Harvester Co. v. Beckman Lumber Co., 222 U. S. 300, 32 S.Ct. 96, 56 L.Ed. 208, wherein it was held that, pending the bankrupt proceedings, and after the filing of the petition, no creditor could obtain by attachment a lien upon the property which would defeat the general purpose of the law to dedicate the property to all creditors alike. Section 70a vests all the property in the trustee, which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him. The bankrupt's discharge is from all provable debts and claims which existed on the day on which the petition for adjudication was filed. Zavelo v. Reeves, 227 U.S. 625, 630, 631, 33 S.Ct. 365, 57 L. Ed. [676, Ann.Cas.1914D, 664]. The schedule that the bankrupt is required to file, showing the location and value of his property, must be filed with his petition.

"We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition."

██ This case would seem to determine that in a case of involuntary bankruptcy, the rights to the property as between the trustee and the bankrupt are to be determined as of the time of filing the petition and are not affected by any action of the bankrupt or any happening taking place between the

filing of the petition and the subsequent adjudication.

In analogy to and upon the strength of the principles laid down in the cases hereinbefore cited, it seems that the rights of the bankrupt here as to any exemption claimed must be determined as of the date when the petition was filed against him.

The homestead exemption now claimed by the bankrupt had not been declared and perfected, as provided by the statute, on the date when the petition was filed. If, as indicated by the authorities quoted, the bankrupt lost all control and dominion over his property as of the date of the filing of the petition, it follows that he was not in position to file any declaration of homestead thereafter. The order of the referee disallowing any and all of the attempted claims of homestead is approved.