## ACME HARVESTER COMPANY *v.* BEEKMAN LUMBER COMPANY.

**ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.**

No. 9. Argued April 25, 1911.—Decided December 18, 1911.

The denial of a right claimed under the judgment of a Federal court lays the foundation for a review in this court, and where the state court proceeds to judgment on the ground that bankruptcy proceedings against the defendant had been concluded by denial of adjudication and the injunction against suits in the state court thereby dissolved this court has jurisdiction.

A finding by the state court that bankruptcy proceedings had been concluded by denial of adjudication does not conclude this court on writ of error to review the judgment of the state court.

Where the state court bases its jurisdiction entirely on the construction given a Federal statute by it adversely to contention of plaintiff in error, this court has jurisdiction to review the judgment. *Rector* v. *Bank,* 200 U. S. 405.

The filing of a petition in bankruptcy is a *caveat* to all the world, and, in effect, an attachment and injunction. *Mueller* v. *Nugent,* 184 U. S. 1, 14.

It is the duty of the bankruptcy court to promptly determine the ques-

tion of adjudication and to proceed with the selection of a trustee and administration of the estate; and it cannot, even if for the benefit of creditors, deny an adjudication and hold jurisdiction over the estate for the purpose of allowing some of the creditors to effect a reorganization and distribution of the property.

With the denial of adjudication the jurisdiction of the bankruptcy court ends and the property becomes subject to ordinary methods and jurisdiction of courts of competent jurisdiction.

There is no power in the District Court to issue an *ex parte* injunction, without notice or service of process, attempting to restrain a creditor suing in a State outside the jurisdiction of the District Court. Ancillary jurisdiction in aid of the jurisdiction of the District Court exists under the act of June 25, 1910, c. 412, 36 Stat. 838. *Re Wood & Henderson*, 210 U. S. 246, distinguished.

215 Missouri, 221, affirmed.

THE facts, which involve the jurisdiction of the bankruptcy court, are stated in the opinion.

Mr. *Alexander New* and Mr. *Edwin A. Krauthoff*, with whom Mr. *Arthur Miller* was on the brief, for plaintiff in error, submitted.

Mr. *Hannis Taylor* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.[1]

This case is here upon writ of error to the Supreme Court of the State of Missouri. The facts stated in the record disclose that on October 19, 1903, an agreement was formulated, having for its purpose the placing of the affairs of the Acme Harvester Company, plaintiff in error, in the hands of a committee of creditors. With this purpose in view an agreement for the signature of the creditors was circulated, naming a committee of five and calling upon the stockholders of the Acme Harvester Company to deposit their shares with the committee, the directors and officers of the company to resign their respective

---

[1] Announced by Mr. Chief Justice White in the absence of Mr. Justice Day.

offices, and the committee to have power to elect a board
of directors, who should act until the debts of the com-
pany were paid in full, and, when so paid, the shares of
stock to be redelivered to the owners. In the circular
accompanying the agreement for the signature of the
creditors it was set forth that the affairs of the company
were in such shape that, if kept a going concern, the debts
could be paid, and deprecating a resort to legal proceed-
ings in court.

On October 22, 1903, certain creditors filed a petition
in involuntary bankruptcy against the Acme Harvester
Company in the District Court of the United States for
the Northern District of Illinois, seeking to have the com-
pany adjudicated a bankrupt, charging that it was in-
solvent and had made certain preferential transfers of
property. On October 24, 1903, the creditors' committee
issued a circular in which they recited that one-half the
creditors in number and two-thirds in amount had already
signed the creditors' agreement; that a petition in bank-
ruptcy had been filed by a law firm claiming to represent
three claims, for the purpose of throwing the company
into bankruptcy; that one of the creditors had already
withdrawn from the proceedings, and setting forth that
the success of such proceedings would wreck the company,
destroy its business, and sacrifice the value of its assets.
The committee added an expression of its confidence that
the court would deny an application for a receiver, and
leave the business in the hands of the creditors. On
October 26, 1903, the creditors' committee issued another
circular, in which it was said that the United States Dis-
trict Court in Chicago had refused to appoint a receiver,
and in so doing the judge had said:

"This estate is a very large one, and is in the hands of a
committee of reputable creditors. It is my judgment that
the creditors ought to manage and control the estate.
The creditors can produce results much better than any

receiver in handling a large manufacturing concern like the Acme Harvester Company."

The circular further said that the court had referred the matter to the referee in bankruptcy to inquire into the truth of the allegations of the petition, and to ascertain whether the petitioning creditors had any standing or right to file the petition, adding that there was really only one creditor left in the bankruptcy proceeding. On November 2, 1903, a circular was issued in which it was stated that an overwhelming majority of the creditors had signified their approval of the plan, and had executed and forwarded the agreement to the creditors' committee. On December 2, 1903, the Acme Harvester Company, by its vice-president, wrote to the Beekman Lumber Company, calling attention to the fact that the Lumber Company had not yet signed the creditors' agreement, and saying:

"You may not be aware that United States Judge Kohlsaat has stopped the matter of any one bringing suit against this company or endeavoring to throw it into bankruptcy, he having decided that we are solvent and that the only reasonable and fair way to handle the business, paying its debts, etc., is through the medium of the credit committee selected by our heaviest creditors. This being the case the only basis on which your claim will receive recognition is by joining with the balance of our creditors, signing the agreement, thus putting yourself on record that you are a creditor and are entitled to such dividends as from time to time the committee might declare."

The Beekman Lumber Company, it appears, did not sign the creditors' agreement, nor, so far as the record discloses, prove its claim in bankruptcy, and on December 7, 1903, filed a petition in the Circuit Court of Jackson County, Missouri, for the purpose of recovering a judgment against the Acme Harvester Company upon an ac-

count for lumber sold and delivered prior to the institution of the proceedings in bankruptcy. No trustee having been selected in the bankruptcy proceedings, the Acme Harvester Company appeared in the state court to file a motion to stay the proceedings, setting up the pending proceedings in bankruptcy. This motion was sustained on January 11, 1904. On May 14, 1904, motion to stay was overruled, and the former order set aside. On October 3, 1904, a petition was filed in the District Court of the United States at Chicago, where the bankruptcy proceedings were pending, for an injunction against the Beekman Lumber Company to restrain it from further pursuing its action in the state court. An injunction was granted, without notice to the Beekman Lumber Company, on *ex parte* hearing the same day. From reports in the record it appears that the creditors' committee took charge of the company's property, and, as such committee, made reports to the United States District judge at Chicago of the doings of the committee in the management of the property, purchases, sales, etc. The creditors' committee also issued a statement to the creditors, showing the results of the business, enclosing copies of the reports made to the Federal District Court, and recommending a reorganization of the company on the basis of stock issued to creditors, at par, for their claims, and fifty cents on the dollar to creditors who did not go into the reorganization. A circular letter, issued by the committee on April 1, 1905, states that two-thirds of the creditors had already been heard from, about eighty per cent (80%) of them desired stock, and the rest preferred fifty per cent (50%) in cash.

On October 12, 1904, the Acme Harvester Company answered in the state court, setting up the pendency of the bankruptcy proceeding and the issuing of the injunction in the District Court of Chicago. Replication was filed by the plaintiff, and, upon trial, a judgment on the

account was directed and rendered on June 20, 1905, in favor of the plaintiff for the amount of its account. Thereafter proceedings in review were prosecuted to the Supreme Court of Missouri, and that court held that the District Court of the United States had no authority to issue the injunction against proceedings in the state court, and held further that the facts disclosed that the District Court of the United States had declined to adjudicate the Acme Harvester Company a bankrupt, and left the property to be administered outside of the Bankruptcy Law, and that the prosecution in bankruptcy had been abandoned. 215 Missouri, 221.

A motion to dismiss the proceedings for want of jurisdiction was made in this court and passed for consideration to the merits. The contention is that inasmuch as the Supreme Court of the State found, as a matter of fact, that the bankruptcy proceedings had been concluded, by denial of the adjudication and an abandonment of the proceedings, that this finding of fact is binding upon this court upon writ of error to the state court, and therefore there is no substantial basis for the writ of error. We are of the opinion that the contention in this respect is not well founded. The defendant below set up a proceeding in a Federal court as a protection against further prosecution in the state court. It further set up the issuing of an injunction in the Federal court, undertaking to stay proceedings in the state court. Thereby the defendant claimed the benefit of a Federal right, which brought the case within § 709 of the Revised Statutes of the United States. The denial of a right claimed under the judgment of a court of the United States lays the foundation for a review in this court. *Pittsburgh. &c. Railway Co.* v. *Loan & Trust Co.*, 172 U. S. 493; *Deposit Bank* v. *Frankfort*, 191 U. S. 499.

The alleged finding of fact that the jurisdiction of the Federal court had ended cannot conclude this court in

reviewing a question of this character. The defendant asserted the power and jurisdiction of the Federal court invoked before the beginning of the state proceedings, and alleged its sufficiency to protect it against further proceedings in the state court. The right of ultimate determination of a contention of that character in this court cannot be defeated by the finding of the state court that the Federal court had exceeded or ended its jurisdiction. The determination of a question of that kind is not a finding upon a disputed question of fact, nor within that class of cases in which this court has repeatedly held that the facts as found in the state court would be regarded as conclusive here. Moreover, the case involved a construction of the Bankruptcy Act. As the plaintiff in error contended that the proper construction of the act would defeat the jurisdiction of the state court, the adverse ruling gave this court jurisdiction. *Rector* v. *Bank,* 200 U. S. 405.

Proceeding, then, to the determination of the case upon its merits, the first question is, Should the state court have declined to exercise its jurisdiction when the pending proceeding in bankruptcy was set up in denial of the right to entertain further proceedings in the state tribunal? It appears from the facts already stated that the petition in bankruptcy had been filed some time before the attempt to attach the property of the bankrupt in the hands of the garnishee in the state court. There is no dispute upon this record that the money attached was owing to the bankrupt and was unquestionably its property.

Whatever may be the limitations of the doctrine declared by this court, speaking by the late Chief Justice Fuller in *Mueller* v. *Nugent*, 184 U. S. 1, 14, where it is said: "It is as true of the present law (1898) as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction, *Bank* v. *Sherman*, 101 U. S. 403; and on adjudication, title to the bankrupt's property became vested in the trustee,

§§ 70, 21*e*, with actual or constructive possession, and placed in the custody of the bankruptcy court," it is none the less certain that an attachment of the bankrupt's property after the filing of the petition and before adjudica- tion cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of administration under the act of Congress. . It is the purpose of the Bankruptcy Law, passed in pursuance of the power of Congress to establish a uniform system of bankruptcy throughout the United States, to place the property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition. It is true that under § 70*a* of the act of 1898 the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt, but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law if an adjudication in bankruptcy shall follow the beginning of the proceedings. Paragraph 5, § 70*a*, in reciting the property which vests in the trustee, says there shall vest "property which, prior to the filing of the petition, he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him" [the bankrupt]. Under § 67*c* attachments within four months before the filing of the petition are dissolved by the adjudication in the event of the insolvency of the bankrupt, if its enforcement would work a preference. Provision is made

for the prompt taking possession of the bankrupt's property, before adjudication if necessary (§ 69a). Every person is forbidden to receive any property after the filing of the petition, with intent to defeat the purposes of the act. These provisions, and others might be recited, show the policy and purpose of the Bankruptcy Act to hold the estate in the custody of the court for the benefit of creditors after the filing of the petition and until the question of adjudication is determined. To permit creditors to attach the bankrupt's property between the filing of the petition and the time of adjudication would be to encourage a race of diligence to defeat the purposes of the act and prevent the equal distribution of the estate among all creditors of the same class which is the policy of the law. The filing of the petition asserts the jurisdiction of the Federal court, the issuing of its process brings the defendant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belonging to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued, and prevents creditors from defeating the purposes of the law by bringing separate attachment suits which would virtually amount to preferences in favor of such creditors. See in this connection the well-considered cases of *State Bank* v. *Cox*, 143 Fed. Rep. 91, C. C. App. of the Seventh Circuit; *Board of County Commissioners* v. *Hurley*, C. C. of Appeals of Eighth Circuit, 169 Fed. Rep. 92, 94

It follows that, if the bankruptcy proceedings were pending, so that the bankruptcy court acquired jurisdiction over the estate, it was error for the state court to proceed to a judgment and appropriation of the property on the attachment suit of a single creditor. It therefore becomes necessary to inquire whether the state court was right in determining that the bankruptcy court had

lost its jurisdiction because of the proceedings had therein. In addition to the facts stated, the Supreme Court of Missouri, in its opinion, said that at the time of the hearing in that court, five years after the institution of bankruptcy proceedings, counsel admitted that no adjudication in bankruptcy had as yet taken place. The case presented therefore shows that the bankruptcy court, upon the filing of the petition in bankruptcy, found an outstanding creditors' agreement under which it was proposed to administer and distribute the estate. It declined to appoint a receiver; it recognized the propriety of the proceedings of the creditors' committee; it received reports of the creditors' committee, and allowed it for years to go on in the operation of the property, to mature a plan for the settlement of the debts outside of the court and not contemplated in the Bankruptcy Act. The creditors in large numbers signified a purpose to take stock in a reorganization, and for more than five years after the time of the filing of the petition, it was found by the Supreme Court of Missouri, had made no attempt to adjudicate the corporation a bankrupt, or proceed to the settlement of the estate under the requirements of the act.

It was the duty of the bankruptcy court, if it intended to administer the property under the Bankruptcy Law, to promptly determine the question of adjudication, to proceed with the selection of a trustee and the administration and distribution of the estate, as required by the act. This it evidently declined to do, and permitted the creditors' committee, which had been organized for the avowed purpose of defeating court proceedings, to administer the estate, to buy and sell property, and mature a plan for the reorganization of the concern. This may have been for the benefit of the creditors, but it was not the administration of the law as laid down in the Bankruptcy Law. It is not within the province of the bankruptcy court to deny an adjudication in bankruptcy, and then hold jurisdiction

over the property for the purpose of allowing some of the
creditors to effect a reorganization and distribution of
the property.

We cannot say that the Supreme Court of Missouri was
wrong; indeed, we think it was right in reaching the con-
clusion that the District Court had declined to adjudicate
the corporation a bankrupt and vest its property in a
trustee, and deeming it best for the creditors to follow
out their plans, had found that the case was not one call-
ing for the intervention of the bankruptcy court. Indeed,
there is nothing in the record to contradict the statement
of the circular in evidence in the court below that the court
had found the corporation solvent. With the question of
adjudication determined against the right to proceed in
bankruptcy, the jurisdiction of the District Court ended,
and the property became subject to the ordinary methods
of procedure in courts of competent jurisdiction.

It is suggested that even now the bankruptcy court may
proceed to an adjudication, but this suggestion is at war
with all that has been done with the knowledge and sanc-
tion of the District Court. As we have seen, the property
to be administered in the bankruptcy court is that which
belonged to the bankrupt at the filing of the petition, and
then subject to his debts. This property can never be
recovered. With the sanction of the District Court much
of it has been sold, its character has been changed, and
it has been dealt with by the creditors' committee regard-
less of the provisions of the Bankruptcy Law. Many of
the creditors have signified their purpose to adjust their
claims by taking stock in a reorganization, or fifty cents
on the dollar, of the amount of their claims. The whole
proceeding makes it clear that the District Court denied
the adjudicatio⟩ and declined to exercise its jurisdiction
as a bankruptcy court.

As to the injunction, we are of the opinion that there was
no power in the District Court to issue an *ex parte* injunc-

tion, without notice or service of process, attempting to restrain the Beekman Lumber Company from suing in a State outside the jurisdiction of the District Court. Such proceeding could only have binding force upon the Lumber Company if jurisdiction were obtained over it by proceedings in a court having jurisdiction, and upon service of process upon such creditor.

Whether ancillary proceedings could be had in a District Court in aid of the jurisdiction of an original court of bankruptcy was a subject of much discussion and divers decisions in the Federal courts. In *Babbitt, Trustee,* v. *Dutcher,* 216 U. S. 102, and on the petition of Elkus in the matter of the Madison Steel Company, a bankrupt, *Elkus, Petitioner,* 216 U. S. 115, the matter came before this court, and it was there determined that there was ancillary jurisdiction in the courts of bankruptcy, in aid of the original jurisdiction in the bankruptcy court, to make orders and issue processes summarily in aid of the original jurisdiction. In the opinion in *Babbitt* v. *Dutcher* it was pointed out by Mr. Chief Justice Fuller, speaking for the court, that the jurisdiction of the bankruptcy courts under the act of 1898 was limited to their respective territorial limits, and was in substance the same as that provided by the act of 1867, giving such courts jurisdiction in their respective districts in matters of proceedings in bankruptcy. The necessary deduction from these cases is to deny to the District Courts jurisdiction such as was sought to be asserted in this case by the issuing of an injunction against one not a party to the proceeding, and which undertook to have effect in the distant jurisdiction outside the territorial jurisdiction of the District Court. Under the act of 1898, as expounded in the two cases in 216 U. S., *supra,* the injunction might have been sought in the District Court of the United States in the District in Missouri where personal service could have been made upon the Beekman Lumber Company. Since the decision

in the cases just referred to, Congress has passed the act of June 25, 1910, 36 Stat. 838, c. 412, amending the Bankruptcy Law, specifically giving ancillary jurisdiction over persons and property within their respective territorial limits to the District Courts of the United States in aid of the receiver or trustee appointed in a bankruptcy proceeding pending in another court of bankruptcy. Statutes of the U. S. of 1909–1911, part 1, page 838.

Nor is there anything in the decision in *In re Wood and Henderson*, 210 U. S. 246, running counter to the conclusion herein announced. In that case it was held that under § 64*d*, giving the bankruptcy court having jurisdiction of the estate the right to determine the amount of an attorney's fee paid out of the estate in anticipation of bankruptcy proceedings, that notice might be served outside the district with a view to a hearing to determine the amount of such compensation. In that case it was expressly held that § 64*d* was *sui generis*, and the right to send notice to the attorneys outside of the district was based upon the theory of that section that the property was within the jurisdiction of the bankruptcy court, which could alone determine the amount to be deducted for the attorney's fee in anticipation of the proceeding; that the proceeding was administrative in character, and that for its purpose a hearing might be had upon form of notice sufficient to advise the attorneys that the court was proceeding to act under the authority conferred by the law.

*Finding no error in the judgment of the Supreme Court of Missouri, it is affirmed.*