## In re A. MUSICA & SON.

(District Court, E. D. Louisiana.   May 27, 1913.)

No. 1,765.

1. BANKRUPTCY (§ 136*)—COURTS OF DIFFERENT DISTRICTS—ANCILLARY JURISDICTION.

Where bankrupts absconded from New York, where original bankruptcy proceedings were instituted, and were arrested in New Orleans, where large sums of money belonging to the bankrupts' estate were found in their possession, the federal District Court of Louisiana had ancillary jurisdiction to aid a receiver appointed by the court of original jurisdiction to recover the money, as provided by Bankr. Act July 1, 1898, c. 541, § 2, subd. 20, 30 Stat. 545, 546 (U. S. Comp. St. 1901, p. 3421), as amended by Act Cong. June 25, 1910, c. 412, § 2, 36 Stat. 839 (U. S. Comp. St. Supp. 1911, p. 1491).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

2. BANKRUPTCY (§ 114*)—EFFECT—DUTY TO RETURN PROPERTY.

Where bankrupts absconded with large sums of money belonging to their estate, and on being arrested the money was taken from them by an unlawful search and seizure, the court for that reason was not required to order it returned to them as against an application by their

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

receiver in bankruptcy that it be turned over to him, since it would be the duty of the court, after ordering the money returned to the bankrupts, to immediately order them to repay it to the receiver.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

3. BANKRUPTCY (§ 114*)—RECOVERY OF FUNDS—ATTORNEYS FOR BANKRUPT—FEES.

Where bankrupts, after absconding with large sums of money belonging to their estate, were arrested and brought before a court of ancillary bankruptcy jurisdiction, where the money was ordered paid over to their receiver in bankruptcy, assignments thereof made to their attorneys would not be recognized, nor would the court of ancillary jurisdiction allow fees to such attorneys out of the part of the fund payable to the receiver, but would leave the determination of their right to fees to the court of original jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 164–166; Dec. Dig. § 114.*]

In Bankruptcy. In the matter of bankruptcy proceedings of A. Musica & Son. Ancillary proceedings by Ezra P. Prentice, as receiver, to recover money and property belonging to the bankrupts' estate. Allowed.

Dufour & Dufour, of New Orleans, La., for trustee.

Lazarus, Michel & Lazarus, of New Orleans, La. (David Sessler, of New Orleans, La., of counsel), for bankrupts and for themselves as interveners.

W. L. Hughes, of New Orleans, La., for interveners Adams & Generelly.

FOSTER, District Judge. On March 19, 1913, a petition for involuntary bankruptcy was filed in the Southern District of New York against the firm of A. Musica & Son, composed of Antonio and Philip Musica, and the individual members of same. On the same day the partners and Arthur Musica, another son, were arrested in New Orleans and held as fugitives from justice from the state of New York, and at the same time a daughter of Antonio Musica, Lucy Grace Musica, was held as a material witness. At the time of their arrest the prisoners were searched, and some $18,500 in cash was found on the person of Lucy Grace Musica and some $56,000 was found on the person of Arthur Musica. A small amount of money, together with some insurance policies and a mortgage note of $28,000, was found on Philip Musica, and a small amount of money on Antonio Musica. This money and property was taken by the police and turned over to the judge of the first city criminal court of New Orleans, before whom the proceedings were pending, to be held as evidence, and he directed the deposit of same in the New Orleans National Bank of New Orleans, where it now is.

On March 20, 1913, Ezra P. Prentice was appointed receiver of the bankrupt firm by the District Court for the Southern District of New York, and on March 22, 1913, through counsel, filed ancillary proceedings in this court to be confirmed as receiver and to recover said money and property as belonging to the bankrupt estate. On

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

April 2, 1913, Prentice filed four petitions in this court, setting up that all the money and property taken from the said prisoners was the property of the bankrupt firm of A. Musica & Son, and on these petitions rules issued on all the above-named parties to show cause why the money and property should not be turned over to him.

The firm and its members were adjudicated bankrupts on April 17, 1913.

On the hearing of the case an affidavit of Arthur Musica was filed, admitting that all the money found on his person, with the exception of $189, had been given to him by his brother Philip for safe-keeping, that he has no title to same, and consenting to its being turned over to the receiver. An affidavit of Lucy Grace Musica was also filed, admitting that all the money found on her person, with the exception of $1,000 belonging to her mother, $60 belonging to her brother, and $1,500 belonging to herself and her sister, Louise, jointly, was given to her by her brother Philip, that she has no title to same, and consenting to its being turned over to the receiver.

The first city criminal court has entered an order, directing the New Orleans National Bank to hold the said property and money subject to the orders of this court. The bank is of course a nominal party.

[1] The Musicas except to the jurisdiction of this court on the ground that they are not domiciled in this district and that no diversity of citizenship exists. They also set up that the court has no power to dispose of money taken from a prisoner by search in violation of his constitutional privileges.

Considering the admissions in the affidavits mentioned, there is now no issue regarding the money acknowledged to belong to the bankrupt estate, and it must be given to the receiver.

If any doubt existed as to the jurisdiction of this court to act summarily in aid of a receiver in bankruptcy appointed by another United States court, it has been removed by the addition of subdivision 20 to section 2 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 545, 546 [U. S. Comp. St. 1901, p. 3421]) by the amendment of 1910 (Act June 25, 1910, c. 412, § 2, 36 Stat. 839 [U. S. Comp. St. Supp. 1911, p. 1491]). Antonio Musica & Son were doing business in the Southern district of New York, and no question is raised to the jurisdiction of that court to adjudicate them bankrupts. The filing of the petition in that court constructively vested it with jurisdiction of all the property of the bankrupts no matter where situated. The reduction of the property to actual possession is a mere detail, to aid in which this court undoubtedly has ancillary jurisdiction, regardless of diversity of citizenship or amount, provided the property is found within the jurisdiction of this court. Acme Harvester Company v. Beekman Lumber Company, 222 U. S. 301–306, 32 Sup. Ct. 96, 56 L. Ed. 208; Babbitt v. Dutcher, 216 U. S. 102 113, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969.

[2] The contention that the property should be returned to the Musicas because they have been deprived of it as the result of an unlawful search and seizure has been learnedly and interestingly discussed by counsel, but in view of the facts and circumstances of the

case the argument is not persuasive. Undoubtedly this court would have jurisdiction to compel the bankrupts to surrender anything in their possession that ought to be turned over to the receiver.

All the parties are before the court. They have appeared by able counsel, and their rights have been fully protected. By the plain provisions of the bankruptcy act, subdivision 15 of section 2 especially, the District Court has ample jurisdiction to make any order not inconsistent with equity. It should be exercised so as to facilitate the prompt settlement of bankrupt estates, and technical pleas of bankrupts and their privies should be disregarded, when no injustice will result.

It would be trifling in the extreme to require the actual custody of the money and other property and documents to be returned to the bankrupts, and to then require them to surrender it to this court on pain of punishment for contempt, and I can see no good reason why the rule should not be made absolute requiring the bank that has the actual custody of the money and other property to turn it over to the receiver.

[3] Adams & Generelly and Lazarus, Michel & Lazarus, attorneys for the bankrupts, have intervened and ask to have certain fees allowed. Unquestionably the attorneys rendered valuable service to the Musicas, and I would award them adequate compensation if I could see my way clear to do so, having due regard for the law. But the assignments of the bankrupts cannot be recognized, and only the court of original jurisdiction can allow counsel fees. In re Wood & Henderson, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046.

There is no proof to the contrary, and therefore the affidavits of Lucy Grace Musica and Arthur Musica may be considered as true. It will be noted that Lucy Grace Musica says that of the funds in her possession $1,500 belongs to her and her sister, Louise, jointly, and I will assume that they have an equal interest in this amount. Therefore there would seem to be no objection, considering the assignment to Adams & Generelly, to turn over to them $750. Arthur Musica also attempted to assign a large amount to Lazarus, Michel & Lazarus, and for the same reasons the amount of $189 may be paid to them. The rights of the attorneys to present their claims for compensation in full to the trustee, to be passed on by the court of original jurisdiction, will be expressly reserved to them. Hon. William A. Bell, special master, will be allowed a fee of $150.

There will be a decree accordingly.