[No. 24008. Department One. February 16, 1933.]
NORTHWEST TEXTILE ASSOCIATION, *Appellant*, v. NATHAN WEINSTEIN, *Respondent*.[1]

*E. B. Seabrook, Fabian B. Dodds,* and *Sidney Teiser,* for appellant.

*S. J. Bischoff* and *Samuel Edelstein,* for respondent.

PARKER, J.—The plaintiff association commenced this action in the superior court for Spokane county seeking foreclosure of a chattel mortgage upon a stock of merchandise situated in the city of Spokane, in that county, which mortgage was executed and delivered by Weinstein Bros., a copartnership consisting of Moe, Abe and Joseph Weinstein, the then owners of

[1]Reported in 19 P. (2d) 108.

the stock of merchandise, to the association in trust for the benefit of their creditors. The stock of merchandise was thereafter conveyed by Weinstein Bros. to Nathan Weinstein, the sole defendant in this action. Nathan Weinstein demurred to the complaint of the association upon the ground that it "fails to state facts sufficient to constitute a cause of action." The demurrer was by the superior court sustained, and, the association having elected not to plead further, final judgment of dismissal was by the court rendered against it, from which it has appealed to this court.

The mortgage, a copy of which is attached to and made part of the complaint, reads, in so far as need be here noticed, as follows:

"THIS INDENTURE, made this 25th day of June A. D. 1931, by MOE WEINSTEIN, of Portland, Oregon, ABE WEINSTEIN, of Seattle, Washington, and JOSEPH WEINSTEIN, of Tacoma, Washington, partners doing business with its principal office in Portland, Oregon, as WEINSTEIN BROS., hereinafter called 'Mortgagors,' to the NORTHWEST TEXTILE ASSOCIATION, INC., a corporation organized under and by virtue of the laws of the State of Oregon, with its principal offices in the City of Portland, Oregon, hereinafter called 'Trustee', WITNESSETH:

"WHEREAS, said Mortgagors are indebted to various persons, firms and corporations in the aggregate amount hereinafter named and have executed the promissory note hereinafter referred to in favor of the Trustee for the benefit of its said creditors and in accordance with a list thereof delivered by the Mortgagors to the Trustee contemporaneously with the delivery of said note:

"Now, THEREFORE, in consideration of the premises and in consideration of the sum of Ten and no/100 ($10) Dollars paid by the Trustee to the Mortgagors, the receipt whereof is hereby acknowledged, the Mortgagors do hereby grant, bargain, sell, convey and confirm unto the said Trustee all of the following described property, goods and chattels, to-wit: . . .

"(4) A stock of goods, wares and merchandise consisting chiefly of men's and women's apparel located in the retail store operated under the name of the 'New York Outfitting Company' at 418 West Riverside avenue, in the city of Spokane, Washington, together with all materials and supplies of whatever kind and description located on the said premises occupied by them and all fixtures, equipment, office and otherwise, accessories, furniture and apparatus used in connection with the said business located on said premises.

"To HAVE AND TO HOLD, all and singular, the personal property aforesaid unto the said Trustee forever, but in trust, nevertheless, for the use and benefit of the present unsecured creditors of said Mortgagors. Provided, always, that if said Mortgagors shall well and truly pay the amount herein mentioned unto the said Trustee, then this mortgage shall be void, otherwise to remain in full force and effect, and that payment of the principal sum is to be made in accordance with the tenor of a certain promissory note of which the following is a substantial copy, to-wit:

"$169,494.51          Portland, Oregon, June 25, 1931

"For value received we promise to pay to Northwest Textile Association, Inc., or order One Hundred Sixty-Nine Thousand Four Hundred Ninety-Four and 51/100 ($169,494.51) DOLLARS in Gold Coin of the United States of America, payable in monthly installments of not less than $7,100 in any one payment. The first payment to be made on the 5th day of August, 1931, and a like payment on the 5th day of each month thereafter, until the whole sum has been paid. If any of said installments are not so paid, the whole sum shall become immediately due and collectible. And in case suit or action is instituted to collect this note, or any portion thereof, we promise to pay such additional sum as the Court may adjudge reasonable as attorney's fees in said suit or action.

"WEINSTEIN BROS.
"By MOE WEINSTEIN
"ABE WEINSTEIN
"JOSEPH WEINSTEIN
"Co-Partners

"And said Mortgagors hereby covenant to and with the said Trustee as follows: . . .

"(2) That until the total indebtedness secured by this mortgage is fully paid and satisfied, said Mortgagors shall pay unto the said Trustee from the proceeds of the sales of said goods, wares and merchandise and property herein mortgaged.

"(a) The net balance remaining after deducting the necessary expenses of operating the business of said Mortgagors and the amount of the purchase price of new merchandise sufficient for the needs of said business; . . .
and for the above purpose an accounting shall be had between said Mortgagors and said Trustee on or before the 4th day of each and every month during the life of this mortgage, beginning on the 4th day of August, 1931, of the proceeds of said business for the preceding calendar month, but in no event shall the payments made under said monthly accounting be less than the sum of $7,100, the same to be credited on said note in accordance with its terms. . . .

"(5) That said Trustee shall deduct from the funds derived from this mortgage its necessary expense of administration as Trustee hereunder, together with a reasonable compensation, which is hereby declared to be in an amount of not less than 5 per cent of all moneys paid to it under this mortgage, and the balance of all moneys coming into the hands of the Trustee under this mortgage shall be paid by said Trustee equitably and ratably to the present unsecured creditors whose claims have been, or hereafter shall be, filed with said Trustee, or proven to the satisfaction of the Trustee. . . .

"(7) That as long as the conditions of this mortgage are fulfilled, the said Mortgagors are to remain in peaceful possession of said property, and in consideration thereof agree to keep said property in as good condition as it now is, reasonable wear and tear excepted. . . .

"(12) This conveyance is given to secure the present indebtedness of the Mortgagors and as security, only, and is not, nor is it intended to be, an absolute

conveyance nor an assignment for the benefit of creditors.''

. Other facts alleged in the complaint of the association, we think, for present purposes, sufficiently appear in the following quotations therefrom:

''Heretofore, on June 25, 1931, Moe Weinstein, Abe Weinstein and Joseph Weinstein were partners doing business under the firm name and style of Weinstein Bros., and were operating a mercantile business, consisting of several stores situated in several cities of the state of Washington and Oregon, . . . and owned and were operating particularly under the name of New York Outfitting Company, that certain store situated at 418 West Riverside avenue, in the city of Spokane, Spokane county, state of Washington, . . .

''Within ten days prior to June 25, 1931, said partnership of Weinstein Bros. employed the plaintiff to act as trustee of all of their property and assets for the benefit and security of their unsecured creditors, and they promised and agreed to pay plaintiff the reasonable value of its services and to pay it for all its necessary expenses in the performance of the said trust, including such reasonable attorneys' fees as plaintiff might necessarily incur in connection with the handling of said trust estate.

: ''On June 25, 1931, said Weinstein Bros., pursuant to said agreement and in furtherance thereof, made, executed and delivered to plaintiff a certain instrument in writing, in the nature of a chattel mortgage, and each of said partners signed and duly acknowledged the same so as to entitle it to be recorded, and the same was thereafter duly filed in the office of the county auditor of Spokane county, state of Washington, document No. 84707, on the 29th day of June, 1931, a true copy of the said instrument being hereto attached and marked exhibit 'A' and hereby referred to for all the terms and provisions thereof, and by said reference is hereby made a part hereof.

''Under and pursuant to said agreement and said instrument plaintiff performed valuable services as such trustee of the reasonable value of $5,000, no part

of which has been paid except the sum of $750, and there is now due and owing thereon the sum of $4,250. And pursuant to said agreement and instrument, plaintiff employed and used the services of an attorney at law, to-wit: Sidney Teiser of Portland, Oregon, . . . legal service of the reasonable value of $5,000 for which plaintiff became and is obligated to pay to said Sidney Teiser, the same being a necessary expense of plaintiff as such trustee, and no part of the same has been paid to plaintiff. . . .

"On June 29th, 1931, a petition in bankruptcy against said partners, composing the firm of Weinstein Bros., was filed in the district court of the United States for the district of Oregon, but no adjudication of bankruptcy was ever rendered or entered therein, but said partners obtained a composition with all their unsecured creditors, which composition was on the 20th day of November, 1931, confirmed by said district court.

"About the 1st day of December, 1931, said Weinstein Bros. transferred and assigned unto the defendant all of their right, title and interest in and to all the property described in said instrument of writing and particularly the property situated in said store at No. 418 West Riverside avenue in the city and county of Spokane, state of Washington, and he is now in possession thereof. And at the time of said transfer and assignment and prior thereto, defendant had actual knowledge and notice of said instrument of chattel mortgage and was personally present at the execution thereof.

"Plaintiff is not herein seeking a personal judgment but is seeking a foreclosure of its lien upon said personal property for the payment of the said sums due it under and pursuant to said agreement and instrument. . . .

"The sum of $1,200 is a reasonable sum to be allowed and adjudged by the court as an attorney's fee for and in the foreclosure of said instrument herein."

The prayer of the complaint is only for foreclosure of the mortgage and sale of the Spokane stock of merchandise now owned by the defendant Weinstein,

to the end that the claim of the association trustee for its services rendered and expenses incurred in administering its trust be paid.

It is not alleged that there was any default on the part of Weinstein Bros. warranting the association trustee in taking any steps whatever looking to its assuming any control over the mortgaged property or looking to the foreclosure of the mortgage. Indeed, on June 29, 1931, only four days subsequent to the execution of the mortgage and over a month prior to the time when the first installment of the secured indebtedness became due, the mortgaged property, with the other property and affairs of Weinstein Bros., passed into the jurisdiction of the Federal court by virtue of the bankruptcy proceedings instituted therein by Weinstein Bros. They then, in due course, obtained a composition with their creditors, which composition was on the 20th day of November, 1931, "confirmed by said district court." This composition was manifestly effected under U. S. C., Title 11, § 30.

We do not overlook the alleged fact that "no adjudication of bankruptcy was ever rendered" in the bankruptcy proceedings. That, however, does not argue that the property and affairs of Weinstein Bros. were not all taken under the jurisdiction of the Federal court by the bankruptcy proceedings. Indeed, Weinstein Bros. consented to that jurisdiction by asking for and procuring the confirmation of their composition with their creditors. *Mueller v. Nugent*, 184 U. S. 1; *Acme Harvester Co. v. Beekman Lumber Co.*, 222 U. S. 300; *Lazarus, Michel & Lazarus v. Prentice*, 234 U. S. 263. Thus it seems plain to us that the association trustee did not at any time render any service as trustee under the mortgage.

We do not overlook the allegations of the complaint that the association rendered services "pur-

suant to said agreement,'' evidently meaning the alleged agreement made ''within ten days prior to June 25, 1931,'' the date of the mortgage. The mortgage does not purport to secure any compensation to the association trustee except for service specified in the mortgage. Even compensation for that service, it may well be argued, is not a lien upon the mortgaged property, but amounts to nothing more at best than a potential claim for services rendered in administering the trust, chargeable against the proceeds of the mortgaged property which may become applicable to the payment of the principal indebtedness secured thereby.

It seems plain to us that, apart from all other considerations, the judgment of the superior court denying to the association trustee the relief prayed for by it must, in any event, be affirmed upon the theory that the association trustee has never performed any service as such trustee under the mortgage. The following authorities, though we do not cite them all as being exactly in point, lend support to this conclusion: *Lammon v. Austin,* 6 Wash. 199, 33 Pac. 355; *Roessler v. Armstrong,* 69 Fla. 1, 67 So. 229; *Newman v. Greene,* 92 Fla. 684, 109 So. 582; *Dillard v. Serpell,* 138 Va. 694, 123 S. E. 343; *Lindsay v. Eichelberger,* 72 W. Va. 201, 77 S. E. 992; *Mercantile Trust & Deposit Co. v. Atlantic & N. C. R. Co.,* 99 N. C. 139, 5 S. E. 417; 41 C. J. 470, 608.

The judgment is affirmed.

TOLMAN, MITCHELL, HOLCOMB, and MILLARD, JJ., concur.