## MOORE v. GARRAGUEZ et al.
### No. 7479.

Circuit Court of Appeals, Ninth Circuit.
April 20, 1936.

Craig & Weller, Thomas S. Tobin, James P. Keleher, and Paul K. Home, all of Los Angeles, Cal., for appellant.

Fred A. Steiner and Harrison G. Sloane, both of San Diego, Cal., for appellee, United States Fidelity & Guaranty Co.

Glassford & Smith, C. B. Smith, and Harry W. Horton, all of El Centro, Cal., for appellees Garraguez and others.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal by the trustee in bankruptcy of the Estate of Zurcher Bros. Co., Inc., from an order dismissing his "Bill in Equity to set aside Fraudulent Transfers of Property and Obtain other relief."

The trustee's bill alleged that the bankrupt was a California corporation having its principal place of business in El Centro, Imperial county; that, upon petition of three creditors, filed October 7, 1931, the bankrupt was adjudged such by the District Court; and that later, appellant herein was elected trustee and qualified.

The bill was filed, so it alleged, for the purpose of vacating and setting aside a fraudulent transfer of the property of Zurcher Bros. Co., Inc.; for vacating, an-

nulling, setting aside, and cancelling a decree of the superior court in the said county; and for compelling an accounting.

It is charged by the bill that Zurcher Bros. Co., Inc., being in financial difficulties, 'the appellees here (except United States Fidelity & Guaranty Company, which was on the bond) entered into a conspiracy to hinder, delay, and defraud creditors, in pursuance of which design defendant B. A. Harrigan transferred a certificate for five shares of stock in the Zurcher Company to defendant Garraguez, without consideration therefor. Defendant Ambort, a creditor of Zurcher Company in the sum of $783.53, transferred said account to Garraguez, also without consideration, the transfer being handled by defendants McKinnon and Kirk, who are attorneys. Thereafter, on September 29, 1931, defendants J. R. Zurcher, H. E. Zurcher, and Peter Zurcher, as directors of the Zurcher Company, waiving notice, consented to a meeting of the Board of Directors of said company, which was held immediately, and the secretary of the corporation authorized to confess judgment in favor of Garraguez in the sum of $783.53. The confession of judgment was signed. On the next day, again waiving notice, the board of directors consented to the holding of another meeting, and a resolution was passed providing that if and when Garraguez instituted suit in the superior court of Imperial county seeking appointment of a receiver for Zurcher Bros. Co., Inc., the corporation to file an answer admitting all of the allegations contained in the complaint. The bill further alleged that defendant McKinnon had prepared a draft of complaint seeking appointment of such receiver, which was filed on September 30, 1931, and on said date defendant Hartigan was appointed receiver by order of the superior court of Imperial county and bond of the United States Fidelity & Guaranty Company in the sum of $10,000 was given. The trustee further alleged that defendants McKinnon and Kirk had not been employed by the plaintiff Garraguez in the receivership action, but had been employed by the defendant Harrigan, who also paid the premium on the receiver's bond; that the facts contained in the complaint in the action seeking appointment of a receiver were not known to plaintiff therein, Garraguez, and that he did not know of any creditors who were threatening suits against the Zurcher Company, nor had he any authority to institute a suit in behalf of creditors. The bill further alleges that on October 7, 1931, three creditors of Zurcher Company filed an involuntary petition in bankruptcy against Zurcher Company and thereafter "pursuant to said conspiracy * * * and for the purpose of further hindering and delaying the creditors" of the company, it filed, through J. R. Zurcher, an answer in the bankruptcy proceedings, denying the allegations of the petition and demanding a jury trial; the creditors filed a motion for the calling of a special jury to hear the issues involved, or, in the alternative, that the cause be advanced on the calendar for immediate hearing; defendant H. E. Zurcher filed an affidavit in the District Court in resistance to the motion alleging that the corporation's indebtedness had been reduced under the receivership, and its assets increased. These contentions, the trustee asserted in the bill, were not true, but, on the contrary, alleged that the receivership had almost entirely dissipated the assets of the corporation. He further alleged that the receiver had filed his final report in the superior court of Imperial county on or about March 30, 1932, praying that it be confirmed and fees allowed; that no notice of the hearing thereon was given the trustee in bankruptcy, but that he received a copy of the report without notice of hearing; that he prepared a petition in intervention in said receivership proceeding seeking a dismissal thereof; that at the time trustee's petition was presented the receiver's report was being heard in court; that the petition was resisted, defendant McKinnon assisting therein; that a continuance was denied and the receiver's report confirmed and fees allowed the receiver and others out of the estate; that these last proceedings occurred on April 15, 1932, after Zurcher Bros. Co., Inc., had been adjudicated a bankrupt; that Garraguez had no financial interest in the outcome of the affairs of the corporation, but merely lent himself to the "conspiracy"; that at the time of the institution of the receivership proceedings the Zurcher company was indebted to numerous wholesale creditors, who did not consent thereto; that defendant McKinnon had knowledge of an extension agreement between Zurcher Bros. Co., Inc., and a large number of wholesale creditors and made no attempt to notify said creditors, nor the Los Angeles Wholesale Board of Trade; that as a result of

the operation of the said receivership the creditors of the bankrupt had suffered a loss greatly in excess of $10,000.

The trustee prayed that the confession of judgment in favor of Garraguez and any judgment or decree based thereon be declared void and of no effect; that the order appointing receiver and all other orders, including the final order in the receivership proceeding be held to be of no force or effect; that the receiver be required to account to the trustee, without right of set-off, for all assets coming into his hands by virtue of the receivership proceeding; that the trustee be entitled to recover all costs and expenses incurred; and that he have exemplary damages from defendants Zurcher, Harrigan, Garraguez, McKinnon, Kirk, and Ambort; that he have damages against United States Fidelity & Guaranty Company in the sum of $10,000, concurrent with damages imposed upon any defendants; that defendants, except receiver Hartigan, be restrained during pendency of the action from concealing or transferring any of their property; and for other and further relief.

Defendants moved to dismiss the bill in equity upon the ground of lack of jurisdiction, for the reason that plaintiff had appeared generally in the receivership proceeding and submitted to the jurisdiction of the state court; that plaintiff had a plain, complete, and adequate remedy at law; that the district court was without jurisdiction to entertain the bill; and for other reasons not necessary to here mention.

■ Because the trial court granted the motion to dismiss, we must proceed upon the assumption that the motion admitted all the well-pleaded facts in the bill as true for the purposes of the motion.

■ While we are of opinion that the state court was, under the decisions of the Supreme Court of California, without jurisdiction to appoint a receiver in an action brought expressly for that purpose, it is unnecessary, as we view the question presented, for us to discuss that point. If we assume that the state court had jurisdiction to make such an appointment and that, in pursuance of such assumed jurisdiction it did appoint a receiver, nevertheless, under the decisions of the Supreme Court of the United States, that jurisdiction ceased as of the date of the filing of the petition in bankruptcy, and the state

court thereafter was without right or power to make any further orders relative to the estate. See Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 307, 32 S.Ct. 96, 99, 56 L.Ed. 208, where it is said that, "The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition."

Again, the Supreme Court said, in Taylor v. Sternberg, 293 U.S. 470, 472, 55 S. Ct. 260, 261, 79 L.Ed. 599:

"Upon adjudication in bankruptcy all the property of the bankrupt vests in the trustee as of the date of the filing of the petition. Upon such filing, the jurisdiction of the bankruptcy court becomes paramount and exclusive; and thereafter that court's possession and control of the estate cannot be affected by proceedings in other courts, whether state or federal. * * *

"Before the petition in bankruptcy was filed, the receiver's compensation as well as that of his counsel were matters wholly within the control of the state court. * * * But with the filing of the petition in bankruptcy, the power of the state court in that respect ceased; and its order fixing the compensation of the receiver and his counsel was a nullity because made without jurisdiction, such jurisdiction then having passed to the bankruptcy court."

Gross v. Irving Trust Co., 289 U.S. 342, 345, 53 S.Ct. 605, 607, 77 L.Ed. 1243, 90 A. L.R. 1215, holds:

"The jurisdiction of the bankruptcy court being paramount, the power of the state court to fix the compensation of its receivers and the fees of their counsel necessarily came to an end with the supervening bankruptcy. When the bankruptcy court acquired jurisdiction the sole power to fix such compensation and fees passed to that court. * * * We adopt, as stating the correct rule, the language used in Lion Bonding & Surety Co. v. Karatz, 262 U.S. 640, 642, 43 S.Ct. 641, 642, 67 L.Ed. 1151, although it was not strictly necessary to that decision: 'Even where the court which appoints a receiver had jurisdiction at the time, but loses it, as upon supervening bankruptcy, the first court cannot thereafter make an allowance for his expenses and compensation. He must apply to the bankruptcy court.'"

The state court was without power to take any steps in the receivership proceeding after the petition was filed, even if it

had jurisdiction previously, for "no other court has the power or authority partially to administer or to deplete the estate, by disposing of or impressing a lien upon it or any part thereof—valid prior liens, of course, excepted—not even in favor of its own receivers." Moore v. Scott, 55 F.(2d) 863, 865 (C.C.A.9). See, also, In re Diamond's Estate, 259 F. 70, 73 (C.C.A.6).

On the question of the exclusiveness of the jurisdiction of the bankruptcy court in all "proceedings in bankruptcy" the Supreme Court said, in United States Fidelity & Guaranty Co. v. Bray, 225 U.S. 205, 217, 218, 32 S.Ct. 620, 625, 56 L.Ed. 1055:

"We think it is a necessary conclusion from these and other provisions of the act that the jurisdiction of the bankruptcy courts in all 'proceedings in bankruptcy' is intended to be exclusive of all other courts, and that such proceedings include, among others, all matters of administration, such as the allowance, rejection, and reconsideration of claims, the reduction of the estates to money, and its distribution, the determination of the preferences and priorities to be accorded to claims presented for allowance and payment in regular course, and the supervision and control of the trustees and others who are employed to assist them. * * *

"A distinct purpose of the bankruptcy act is to subject the administration of the estates of bankrupts to the control of tribunals clothed with authority and charged with the duty of proceeding to final settlement and distribution in a summary way, as are the courts of bankruptcy. Creditors are entitled to have this authority exercised, and justly may complain when, as here, an important part of the administration is sought to be effected through the slower and less appropriate processes of a plenary suit in equity in another court, involving collateral and extraneous matters with which they have no concern, such as the controversy between the complainant and the indemnitor banks.

"Of the fact that the suit was begun in the circuit court with the express leave of the court of bankruptcy it suffices to say that the latter was not at liberty to surrender its exclusive control over matters of administration, or to confide them to another tribunal."

█ In view of the fact that the state court receiver is not regarded as one in adverse possession (In re Diamond's Estate, supra, 259 F. 70, at page 74), and that the bill discloses that the state court receiver turned over to the trustee the remaining assets of the estate of the bankrupt, it appears that the bankruptcy court had jurisdiction to require the receiver to account in a summary proceeding. Having such summary jurisdiction, the bankruptcy court can compel the receiver and his attorneys to return to the estate all sums of money received by them from said estate. If the bankruptcy court had jurisdiction, which must be conceded, such jurisdiction was exclusive. The jurisdiction of the bankruptcy court being exclusive, and the bankruptcy court having no right to surrender it, there was no jurisdiction in a court of equity in this phase of the instant suit.

█ The next point is whether the bill states a cause of action against defendants appellees Garraguez, Harrigan, McKinnon, Kirk, Ambort, Hazel Gleghorn, and the Zurchers. The bill seeks to set out a conspiracy upon the part of the above-named defendants to hinder, delay, and defraud creditors of the insolvent Zurcher Bros. Co., Inc., by means of a confession of judgment of an alleged claim and the procuring of the appointment of a receiver in a proceeding in a court which did not have power to so appoint a receiver. The bill, however, does not show wherein the estate was damaged, although if what the bill alleges is true, damage to the estate must surely have resulted. In addition, the prayer directed to these defendants (it does not mention Hazel Gleghorn, nor is she mentioned at all in the complaint, save in the caption and in Exhibit A, the bond) is as follows:

"That inasmuch as said receivership proceedings were instituted maliciously and by means of collusion and fraud between the defendants B. A. Harrigan, George Garraguez, Hugh McKinnon, George R. Kirk, Aux Ambort, J. R. Zurcher, H. E. Zurcher and Peter Zurcher, that the amount that this Court determines is due the plaintiff in an accounting against the Receiver, appointed as a result of their collusion, malice and fraud, may be trebled as exemplary damages for the sake of example and by way of punishing said defendants."

It is readily apparent that the bill shows no damages against these defendants and

that such damages, if any exist, can be ascertained only after a full accounting by the receiver to the bankruptcy court. Therefore, it appears that the plaintiff's remedy is by an action at law against these defendants after the receiver has accounted to the bankruptcy court and the damages, if any, are ascertained.

The bond given by the United States Fidelity & Guaranty Company is denominated "Undertaking on ex parte application for appointment of receiver," and was to indemnify Zurcher Bros. Co., a corporation, H. E. Zurcher, J. R. Zurcher, Hazel Gleghorn, and Peter Zurcher, in the sum of $10,000 for all damages sustained by them in case George Garraguez should have procured the appointment wrongfully, maliciously, or without cause.

The liability of this defendant upon its bond is purely contractual; it was given to protect the Zurcher Bros. Co. against damages suffered through or because of the appointment of the receiver; it was not a receiver's faithful performance bond. In such circumstances, with the corporation actively assisting in procuring the appointment of the receiver it is obvious that it could complain of no injury through such appointment. Therefore the bill states no cause of action against the United States Fidelity & Guaranty Company.

The following decree will be entered:

(1) The decree of dismissal as to Chester A. Hartigan, as receiver of Zurcher Bros. Co., Inc., will be reversed, so as to permit plaintiff to amend his complaint in order to invoke the summary jurisdiction of the bankruptcy court to compel an accounting by said receiver to said court. Cf. In re Eilers Music House, 274 F. 330, 335 (C.C.A.9); In re Raphael, 192 F. 874 (C.C.A.7).

(2) The decree of dismissal as to defendants George Garraguez, B. A. Harrigan, Hugh S. McKinnon, George R. Kirk, Aux Ambort, John R. Zurcher, H. E. Zurcher, Peter Zurcher, and Hazel Gleghorn will be modified so as to provide for dismissal without prejudice to the bringing of an action at law for damages by the trustee, if so advised.

(3) The decree, in so far as it applies to the United States Fidelity & Guaranty Company will be affirmed.

Reversed in part, modified in part, and affirmed in part.