**In re WILLIAMS' ESTATE.**

No. 8626.

District Court, D. Maryland.

Nov. 14, 1936.

Lee I. Hecht and Lawrence W. Hecht, both of Baltimore, Md., for trustee.

J. Wilmer Cronin, of Aberdeen, Md., for mortgagee.

CHESNUT, District Judge.

The question now presented to the court in the above entitled case is whether certain real estate in which the bankrupt has a one-third undivided interest, situated in Aberdeen, Harford County, Maryland, should be sold by the trustee in bankruptcy or by a mortgagee of the property in foreclosure proceedings in the Circuit Court for Harford County, a court of the State of Maryland. The facts are these. On August 7, 1936, an involuntary proceeding in bankruptcy was filed against Grace C. Williams in this court. On August 18, 1936, she filed an answer admitting insolvency but denying an act of bankruptcy. On August 21, 1936, cer-

tain of her creditors filed a petition for the appointment of a receiver and one was appointed by this court on the same day.

Some days prior to September 11, 1936, notice in due course was given that the proceedings in the bankruptcy case would be included in the preliminary call of the bankruptcy docket on September 11, at 3 o'clock P. M., for the purpose of assigning the case for trial or other disposition. Thereupon the attorney for the bankrupt prepared a supplemental answer consenting to an adjudication in bankruptcy which was executed by the respondent, and delivered to the bankruptcy receiver on September 11, 1936, in the forenoon. In the afternoon of the same day upon submission of the papers to the court, the respondent was adjudicated a bankrupt; and in due course thereafter a trustee was elected and has qualified and is now seeking to enjoin the sale in the state court.

In the forenoon of September 11, 1936, the Enterprise Building and Loan Association of Harford County holding a mortgage on the whole interest in the property, which was overdue and in default in the amount of about $2,500 filed a foreclosure proceeding in the Circuit Court for Harford County, and on September 18, 1936, advertised the property for sale under the mortgage. The provisions for foreclosure of the mortgage contained therein were in the usual form prevailing in the Counties in Maryland as contrasted with the mortgage foreclosure proceeding prevailing in Baltimore City. The legal difference and effect between the two forms is that in the ordinary County procedure the attorney named in the mortgage advertises the property for sale without the prior assumption of jurisdiction by the court, which latter occurs ordinarily only upon the attorney's report of sale to the court; while in Baltimore City a mortgage foreclosure proceeding is usually initiated by a petition to the equity court by the mortgagee asking the appointment of a trustee with authority to make the sale and thereupon the court appoints a trustee with authority to sell; and this constitutes the assumption of jurisdiction by the equity court. See In re Hurlock (D.C.Md.) 23 F.(2d) 500, 501; In re Bradford (D.C.Md.) 7 F.Supp. 665, 672, affirmed Bradford v. Fahey (C.C.A.) 77 F.(2d) 992. In this particular case, however, the attorney for the mortgagee apparently did not follow the ordinary County practice but in the forenoon of September 11th filed a petition asking the court to assume jurisdiction, on which a brief order was passed by the Circuit Court for Harford County in equity on the same day in the forenoon "that jurisdiction be and it hereby is assumed in these proceedings." While this would seem to have been a departure from the usual course of a mortgage foreclosure under a County form of mortgage, I assume that, save for the effect of the bankruptcy proceedings, the order of the Circuit Court for Harford County would validly have constituted an assumption of jurisdiction over the mortgaged property.

Nevertheless it is entirely clear that this court in bankruptcy had previously acquired jurisdiction of the bankrupt's one-third undivided interest in the property. As was succinctly stated by Judge Soper in the Hurlock Case, supra:

"The rules of comity apply, and the first court to secure possession and custody of the property, through its officers, has exclusive jurisdiction to hear and determine all controversies in regard thereto."

As this court in bankruptcy had appointed a receiver for the bankrupt's property, before the assumption of jurisdiction by the state court, it is clear that this court and not the state court was the first court to secure possession and custody of the property and its jurisdiction therefore becomes exclusive.

The point in the case relied upon by the mortgagee in the assertion of its right to foreclose the mortgage in the state court is that the assumption of jurisdiction in the state court preceded by a few hours on the same day the adjudication in bankruptcy in this court. But this is not a controlling or even an important circumstance in view of the fact that the petition in bankruptcy had been filed in this court long before the foreclosure proceedings were initiated in the state court. And this would be true even though this court had not appointed a receiver prior to the mortgage foreclosure proceeding. In Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 466, 75 L.Ed. 1060, the Supreme Court said, in a case involving the conflicting jurisdiction of a state and federal court in bankruptcy:

"The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. This jurisdiction is exclusive within the field defined by the law, and is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition. Acme Harvester Co. v. Beekman Lumber Co., 222 U.S. 300, 32 S.Ct. 96, 56 L.Ed. 208. It follows that liens cannot thereafter be obtained nor proceedings be had in other courts to reach the property, the district court having acquired the exclusive right to administer all property in the bankrupt's possession. * * * Though a lien be not discharged by bankruptcy, its owner may not, without the bankruptcy court's permission, institute proceedings in a state court to enforce it, since his so doing might interfere with the orderly administration of the estate. Thus a mortgagee will be restrained from instituting or proceeding further in a foreclosure action, begun after the date of the petition in bankruptcy."

See also, Isaacs v. Hobbs Tie & T. Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. In Ex parte Baldwin, 291 U.S. 610, 615, 54 S.Ct. 551, 553, 78 L.Ed. 1020, the Supreme Court said:

"All property in the possession of a bankrupt of which he claims the ownership passes, upon the filing of the petition in bankruptcy, into the custody of the court of bankruptcy. To protect its jurisdiction from interference, that court may issue an injunction. The power is not peculiar to bankruptcy or to the federal courts. It is an application of the general principle that, where a court of competent jurisdiction has, through its officers, taken property into its possession, the property is thereby withdrawn from the jurisdiction of other courts. Having possession, the court may not only issue all writs necessary to protect its possession from physical interference, but is entitled to determine all questions respecting the same."

In George B. Matthews & Sons v. Webre Co. (D.C.La.) 213 F. 396, affirmed sub nomine Pugh v. Loisel (C. C.A.5) 219 F. 417, the sequence of events was precisely the same as in the instant case, that is, a petition for involuntary bankruptcy filed before the mortgage foreclosure which latter preceded the bankrupt's adjudication. It was nevertheless held that the bankruptcy court and not the state court had jurisdiction to sell the mortgaged property. See also, Croft v. Croft (1932) 109 N.J.Eq. 427, 157 A. 843, 19 A.B.R.(N.S.) 320; 11 U.S.C.A. §§ 75 (a) and 110. The latter provides:

"(a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt," etc.

The attorney for the mortgagee on September 18, 1936, advertised the property for sale, and the bankruptcy receiver thereupon on September 22, 1936, petitioned this court to enjoin the sale. Answers were filed by the mortgagee and others in interest. The mortgagee opposed the issuance of an injunction and asserted his right to sell, but the owners of the other two-thirds equitable interest in the property have consented to a sale of the whole interest in the property by this court.

As a result of a conference between the attorney for the mortgagee and the bankruptcy receiver, the former, without waiver of his rights to ultimately make the sale, agreed to postpone the time of the sale until after the election of a bankruptcy trustee, so that the latter might at the time of the sale of the real estate also sell certain personal property situated in the premises which had been used and operated by the bankrupt in part as a grocery store. But recently the attorney for the mortgagee has again advertised the property for sale under the mortgage on November 24th next; and in consequence the bankruptcy trustee is now pressing for an injunction against that sale, in that respect adopting the petition for injunction as originally filed by the receiver on September 22, 1936.

A hearing was recently had upon this petition at which testimony was taken and counsel were heard and later submitted briefs, all of which I have carefully considered. The testimony established clearly enough that there is a substantial equity in the real estate over and

above the amount of the mortgage indebtedness. In addition thereto it appears that in the property, which was used in large part as a grocery store, there are store fixtures, the substantial value of which can probably only be realized if sold with and as a part of the real estate. It is very clear therefore that it is highly in the interest of the unsecured creditors that the property, both real and personal, be sold as a whole, and this is not adverse to the interests of the mortgagee who will be entitled to payment in full for the amount of the mortgage debt out of the proceeds of sale. The trustee should offer for sale the real estate and the personal property separately, and then jointly, and sell to the highest bidder or bidders. As the testimony clearly showed a substantial value in the real estate over and above the amount of the mortgage indebtedness, it is quite improbable that any sale would be ratified by the court which did not produce full payment for the mortgagee.

The mortgagee makes the point that as the bankrupt owned only an undivided one-third interest as tenant in common the trustee cannot sell the other two-thirds interest in the property. If this were the situation, it would furnish a good reason for the exercise of this Court's discretion to allow the sale to be made under the mortgage. But the owners of the other two-thirds interest in the property have voluntarily submitted their interests to the jurisdiction of this Court and expressed their wish to have the whole interest in the property sold under its order. The property was originally owned by the husband of the bankrupt (by whom the mortgage was made) and after his death it passed as to one-third to his widow, the bankrupt, and one-third each to their children, a daughter and a son, the latter married. These two children have assented to the sale of their interests in the property along with that which is now vested in their mother's bankruptcy trustee, and have expressed the preference that the sale should be so made. It will also be necessary to secure and file in the proceeding the consent of the son's wife to the sale. The trustee states that he is assured this consent will be filed in writing in the case in a day or two, and this must be made a condition of the sale by the trustee.

It is true, of course, that the bankrupt trustee by virtue of his appointment took title only to the bankrupt's one-third interest in the property, but the bankrupt as one tenant in common had been in full possession and use of the whole property until her bankruptcy when she was succeeded in possession by the receiver and later in title also by the trustee. The latter of course took the property subject to the proper interests and equities of the other tenants in common; (In re McConnell [D.C.] 197 F. 438), but they have consented to the sale, and their interests in the proceeds will be hereafter adjudicated on the usual applicable equitable principles. It is within the province of the bankruptcy court, having taken jurisdiction of the property to determine the several rights and interests therein according to the principles of equity.

It results in my opinion that the petition for an injunction against the mortgagee's proposed sale should be granted. Counsel may submit the appropriate order therefor. It is understood, of course, that the trustee in bankruptcy will forthwith advertise the property for sale (after the usual bankruptcy procedure) so that the mortgagee will not be unreasonably further delayed in collecting its secured indebtedness.